**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

| | |
|---|---|
| KEITH KOCH, Individually and on Behalf of All Others Similarly Situated, <br><br>               Plaintiff, <br>     vs. <br><br><br> INSPIRATO INCORPORATED, BRENT HANDLER, AND R. WESTER NEIGHBOR, <br><br>            Defendants. | Civil Action No. 1:23-cv-00438-RMR-MEH <br><br><br><br><br> JURY TRIAL DEMANDED <br><br> <u>CLASS ACTION</u> |

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED
COMPLAINT**

---

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................ 1

        A.      Background ..................................................................................................... 1

        B.      The Company's Restatement and Post Class Period Events ................................. 2

III.    STANDARD OF REVIEW ....................................................................................... 4

IV.     PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT.. 5

        A.      Plaintiff Adequately Alleges that Defendants Made Materially False and
                Misleading Statements ............................................................................................ 5

                1.      The Company's Restatement Constitutes an Admission that Its Financial
                        Results Were Materially False at the Time They Were Issued................... 5

                2.      Defendants' SOX Certifications Were False and Misleading .................... 6

                3.      Defendants' Falsity Arguments Fail .......................................................... 7

        B.      Plaintiff Adequately Alleges that Defendants Acted with Scienter ...................... 10

                1.      The Confidential Witnesses Support a Strong Inference of Scienter ....... 10

                2.      The Severity of the Company's Internal Control Problems Supports a
                        Strong Inference of Scienter .................................................................... 14

                3.      CFO Neighbor's Departure Bolsters the Strong Inference of Scienter
                        Alleged .................................................................................................... 14

V.      CONCLUSION ......................................................................................................... 15

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Adams v. Kinder-Morgan, Inc.*,
  340 F.3d 1083 (10th Cir. 2003) ............................................................................................. 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 4

*Better v. YRC Worldwide Inc.*,
  No. CIV.A.11-2072-KHV, 2012 WL 4433500 (D. Kan. Sept. 25, 2012) ................................. 9

*City of Pontiac Gen. Empls.' Ret. Sys. v. Lockheed Martin Corp.*,
  875 F. Supp. 2d 359 (S.D.N.Y. 2012) ...................................................................................... 6

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ................................................................................................. 10

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................................................................... 15

*Exkae Ltd. v. Domo, Inc.*,
  No. 2:19-CV-781-DAK-DAO, 2020 WL 7352735 (D. Utah Dec. 15, 2020) .......................... 13

*Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017)....................................................................................... 5

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,
  No. 220CV00368JNPDBP, 2022 WL 716653 (D. Utah Mar. 9, 2022) ................................... 7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)................................................................................................................. 5

*Ho v. Duoyuan Global Water, Inc.*,
  887 F. Supp. 2d 547 (S.D.N.Y. 2012)..................................................................................... 15

*In re Facebook, Inc. Sec. Litig.*,
  No. 22-15077, 2023 WL 8365362 (9th Cir. Dec. 4, 2023)........................................................ 8

*In re Flowers Foods, Inc. Sec. Litig.*,
  No. 7:16-CV-222 (WLS), 2018 WL 1558558 (M.D. Ga. Mar. 23, 2018)............................... 13

*In re Interpool, Inc. Sec. Litig.*,
No. Civ. 04-321(SRC), 2005 WL 2000237 (D.N.J. Aug. 17, 2005) .......................................... 6

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
667 F.3d 1331 (10th Cir. 2012) ...................................................................................... 7, 9

*In re NTL, Inc. Sec. Litig.*,
347 F. Supp. 2d 15 (S.D.N.Y. 2004) ..................................................................................... 7

*In re OCA, Inc. Sec. and Derivative Litig.*,
No. 05-2165, 2006 WL 3747560 (E.D. La. Dec. 14, 2006) ........................................................ 7

*In re Overstock Sec. Litig.*,
No. 2:19-CV-709-DAK-DAO, 2020 WL 5775845 (D. Utah Sept. 28, 2020) ............................ 9

*In re Proquest Sec. Litig.*,
527 F. Supp. 2d 728 (E.D. Mich. 2007) ................................................................................ 6

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ..................................................................................... 8, 13

*In re SemGroup Energy Partners, L.P.*,
729 F. Supp. 2d 1276 (N.D. Okla. 2010) ............................................................................. 15

*In re VeriFone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012) ...................................................................................... 12, 14

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016) ................................................................................................ 8

*Ley v. Visteon Corp.*,
543 F.3d 801 (6th Cir. 2008) .............................................................................................. 5

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ............................................................................................................ 5

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*,
79 F.4th 1209 (10th Cir. 2023) ........................................................................................... 9

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ............................................................................................ 7

*Middlesex Retirement Sys. v. Quest Software Inc.*,
527 F. Supp. 2d 1164 (C.D. Cal. 2007) ............................................................................... 10

*Mishkin v. Zynex Inc.*,
No. 09-CV-00780-REB-KLM, 2011 WL 1158715 (D. Colo. Mar. 30, 2011) .................. *passim*

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
58 F.4th 195 (5th Cir. 2023) .............................................................................. 8, 14

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015) ............................................................................................ 9

*Pirraglia v. Novell, Inc.*,
339 F.3d 1182 (10th Cir. 2003) ........................................................................... 5

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015) ................................................................... 14

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
No. 1:16-CV-3591-GHW, 2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ................ 6

*Rumbaugh v. USANA Health Scis., Inc.*,
No. 2:17-CV-106, 2018 WL 5044240 (D. Utah Oct. 17, 2018) .............................. 13

*SEC v. Kelly*,
663 F. Supp. 2d 276 (S.D.N.Y. 2009) .................................................................. 6

*Slayton v. Am. Express Co.*,
604 F.3d 758 (2d Cir. 2010) ................................................................................ 8

*Sorkin, LLC v. Fischer Imaging Corp.*,
No. CIV.A. 03-CV-00631-R, 2005 WL 1459735 (D. Colo. June 21, 2005) ........... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .................................................................................. 4, 10, 15

*TSC Indus. v. Northway, Inc.*,
426 U.S. 438 (1976) ............................................................................................ 6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
672 F. Supp. 2d 596 (S.D.N.Y. 2009) .................................................................. 6

*Voulgaris v. Array Biopharma Inc.*,
No. 17-CV-02789-KLM, 2020 WL 8367829 (D. Colo. Nov. 24, 2020) .................... 9

STATUTES

15 U.S.C. §78u-4(b)(1)(B) ......................................................................................................... 5

15 U.S.C. §78u-4(b)(2) .............................................................................................................. 10

15 U.S.C. §78u–5(c)(1)(B)(i) ...................................................................................................... 8

## I.    INTRODUCTION

This is a securities class action on behalf of all persons and/or entities who purchased or acquired the securities of Inspirato Incorporated ("Inspirato" or the "Company") between May 11, 2022, and December 15, 2022, inclusive ("Class Period"), pursuant to the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.  During the Class Period, Defendants made numerous representations regarding the financial reporting for Inspirato, as well as representations regarding the effectiveness of the Company's internal controls.[1]  As the Company later admitted through its restatement, however, these representations were false.

Contrary to the assertions contained within Defendants' Motion to Dismiss Amended Class Action Complaint ("Motion"), Lead Plaintiff Ilan Bouzaglo ("Plaintiff") has adequately pled claims under the Exchange Act.  Specifically, Plaintiff has alleged that Defendants' statements were false and misleading, and that Defendants made their misrepresentations with scienter.  Thus, the Court should deny Defendants' Motion.

## II.    STATEMENT OF FACTS

### A.    Background

Inspirato is a travel subscription company that claims to provide unique solutions for: (1) affluent travelers seeking superior service and certainty across a wide variety of accommodations and experiences; and (2) hospitality suppliers who want to solve pain points that include monetizing excess inventory and efficiently outsourcing the hassle involved in managing rental properties.  ¶17.[2]  The Company's portfolio was accessed through its subscription platform.  ¶19.

---

[1]    Defendants are Inspirato, Chief Executive Officer ("CEO") Brent Handler ("Handler") and Chief Financial Officer ("CFO") R. Webster Neighbor ("Neighbor") (collectively "Defendants.").
[2]    Unless indicated otherwise, all paragraph ("¶") references are to Plaintiff's Amended Class Action Complaint for Violation of the Federal Securities Laws ("Complaint").

1

The Company offered three subscriptions: (1) Inspirato Club; (2) Inspirato Pass; and (3) Inspirato Select. *Id.* Inspirato Club subscribers paid an enrollment fee and monthly or annual subscription for access to the Company's portfolio of branded Inspirato luxury vacation homes, luxury hotels, and five-star resort partners, Inspirato Only experiences, and custom Bespoke itineraries. ¶20. Inspirato Pass subscribers paid an enrollment fee and a monthly or annual subscription that was inclusive of nightly rates, taxes, and fees for Pass trips. ¶21. Inspirato Select subscribers paid an enrollment fee and annual subscription. ¶22.

The Company represented that all three subscriptions offered travelers: (1) the ability to book trips of their choice up to one year in advance; (2) the purported full Inspirato service experience; and (3) access to Inspirato benefits. ¶23. The Company represented that since its founding, it developed a highly flexible, asset-light approach to controlling and managing its residences. ¶27. Inspirato claimed that the central tenet of this approach is that it leased its homes, paying the owners fixed rental income, rather than buying them. *Id.*

**B.    The Company's Restatement and Post Class Period Events**

On November 14, 2022, the Company announced the following:

On November 8, 2022, the Audit Committee (the "Audit Committee") of the Board of Directors of Inspirato Incorporated (the "Company") concluded, after discussion with the Company's management, that the Company's unaudited condensed consolidated financial statements as of and for the quarterly periods ended March 31, 2022 and June 30, 2022 (collectively, the "Non-Reliance Periods") included in the Quarterly Reports on Form 10-Q filed with the [SEC] for the Non-Reliance Periods, should no longer be relied upon.

¶43. The Company announced further:

This is due to the incorrect application of Accounting Standards Update (ASU) No. 2016-02, Leases (Topic 842) ("ASC 842") with respect to the assessment of right-of-use assets and liabilities, resulting in an understatement of both right-of-use assets and total lease liabilities of approximately 9% for each of the Non-Reliance Periods resulting in an understatement of total assets and total liabilities by approximately 5% for each of the Non-Reliance periods, and due to property-related and other expenses being under accrued in the first quarter, and over accrued

2

in the second quarter, resulting in cost of revenue being understated by approximately 1% and overstated by approximately 5% in the first and second quarter, respectively. Similarly, any previously issued or filed reports, press releases, earnings releases, and investor presentations or other communications describing the Company's condensed consolidated unaudited financial statements and other related financial information covering the Non-Reliance Periods should no longer be relied upon.

* * *

In connection with the restatements discussed above, the Company's management has re-evaluated the effectiveness of the Company's disclosure controls and procedures as of March 31, 2022 and June 30, 2022 and based on that evaluation, the Company's management has concluded its disclosure controls and procedures remained ineffective due to the unremediated material weaknesses previously disclosed in Item 4 "Controls and Procedures" in the Company's Quarterly Reports on Form 10-Q filed with the SEC for the Non-Reliance Periods. Management is developing a remediation plan for the material weaknesses.

*Id*.

On the same day, the Company also announced that it would not be able to file its Form 10-Q for the quarter ended September 30, 2022. ¶44. On this news, Inspirato's stock price fell 12%. ¶45. On November 23, 2022, the Company disclosed its receipt of a Notice from NASDAQ. ¶46. On this news, Inspirato's stock price fell more than 3%. ¶48.

Then, on December 15, 2022, the Company announced, among other things, that:

As disclosed in the Company's Current Report on Form 8-K, filed with the SEC on November 14, 2022, the Restatement is to correct errors that resulted from (i) the incorrect application of Accounting Standards Update (ASU) No. 2016-02, Leases (Topic 842) ("ASC 842") with respect to the assessment of right-of-use assets and lease liabilities and (ii) the under accrual of liabilities and property related and other expenses as of March 31, 2022. The incorrect application of ASC 842 led to an understatement of $25 million of the right-of-use assets and total lease liabilities as of March 31, 2022. Separately, property-related and other expenses were understated by $0.3 million during the three-months ended March 31, 2022… In connection with the Restatement, the Company's management concluded that as of March 31, 2022, its disclosure controls and procedures remained ineffective at a reasonable assurance level due to the unremediated material weaknesses in its internal control over financial reporting previously disclosed in Part I, Item 4. "Controls and Procedures" of the Original Report…

3

\* \* \*

- We have lacked a sufficient number of personnel with the appropriate level of knowledge and experience in the application of GAAP, including the adoption and ongoing accounting for leases under ASC 842, and in the design and implementation of internal controls and have not had the necessary business processes and related internal controls.

\* \* \*

- We did not design and maintain effective controls relevant to the preparation of our financial statements with respect to information technology general controls ("ITGCs").

\* \* \*

- We did not design and maintain effective controls relevant to the preparation of our financial statements with respect to ITGCs.

¶49.  On this news, Inspirato's stock price fell 7%.  ¶50.

On January 18, 2023, the Company announced a plan to streamline operations, including a workforce reduction, that impacted approximately 12% of the Company's staff.   ¶52. Subsequently, on May 3, 2023, the Company received a notice from NASDAQ that the Company was not in compliance with Nasdaq's Listing Rule 5450(a)(1).  ¶55.

## III.   STANDARD OF REVIEW

A plaintiff's allegations need only be "plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

4

Additionally, courts must view the alleged facts "in the light most favorable to the nonmoving party." *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1187 (10th Cir. 2003).

## IV.    PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT

To state a claim, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014). Defendants challenge the Complaint only with respect to falsity and scienter.

### A.    Plaintiff Adequately Alleges that Defendants Made Materially False and Misleading Statements

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA") – which is applicable to claims made under the Exchange Act – a plaintiff adequately pleads falsity by "specify[ing] each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. §78u-4(b)(1)(B). Plaintiff has done so here.

#### 1.    The Company's Restatement Constitutes an Admission that Its Financial Results Were Materially False at the Time They Were Issued

The Company's restatement constitutes an admission of falsity. "By definition . . . a restatement says that the prior financial statement was false." *Ley v. Visteon Corp.*, 543 F.3d 801, 812-13 (6th Cir. 2008), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011). Indeed, "the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." *Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 544 (S.D.N.Y. 2017). Additionally, contrary to Defendants' contention that their errors were "small," "technical," and "nuanced" (Motion at 8), "under Generally Accepted Accounting Principles ('GAAP'), a restatement issues only when errors are

5

material." *SEC v. Kelly*, 663 F. Supp. 2d 276, 285 (S.D.N.Y. 2009); *see also In re Interpool, Inc. Sec. Litig.*, No. Civ. 04-321(SRC), 2005 WL 2000237, at *5 (D.N.J. Aug. 17, 2005) ("[a] restatement is specifically not proper for new information or subsequent developments or for better insight or improved judgment").  During the Class Period, Defendants made several representations regarding the Company's financial results. ¶¶28, 30, 31.  The Company announced on November 14, 2022, however, that its unaudited condensed consolidated financial statements as of and for the quarterly periods ended March 31, 2022, and June 30, 2022, should no longer be relied upon. ¶43.  "Misreported financial information clearly amounts to a false statement of fact." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 606 (S.D.N.Y. 2009).[3]

### 2.    Defendants' SOX Certifications Were False and Misleading

Defendants' certifications made pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") were also false and misleading.  SOX certifications are actionable as misrepresentations when defendants are severely reckless in signing such certifications. *See, e.g.*, *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 1:16-CV-3591-GHW, 2020 WL 1877821, at *12 (S.D.N.Y. Apr. 14, 2020) ("Defendants' SOX certifications are plausibly alleged to have been false or misleading"); *In re Proquest Sec. Litig.*, 527 F. Supp. 2d 728, 745-46 (E.D. Mich. 2007) (holding that defendants' SOX certifications demonstrated the falsity of defendants' statements).

Throughout the Class Period, Defendants made representations regarding the effectiveness of the Company's internal controls.  ¶¶29, 31.  However, the Company subsequently announced that it "has concluded its disclosure controls and procedures remained ineffective due to the

---

[3]   "Only if the established omissions are so obviously important to an investor, that reasonable minds cannot differ on the question of materiality is the ultimate issue of materiality appropriately resolved as a matter of law. . . ." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *see also City of Pontiac Gen. Empls.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 368 (S.D.N.Y. 2012) ("even the SEC [Staff Accounting] Bulletin [No. 99] notes that the 5% threshold is merely a rule of thumb and that materiality cannot be reduced to a numerical formula.").

unremediated material weaknesses . . . . " ¶43. As demonstrated below, Defendants made these statements with scienter. Thus, Plaintiff has adequately alleged that "defendants' [SOX] certifications were false or misleading when made." *In re OCA, Inc. Sec. and Derivative Litig.*, No. 05-2165, 2006 WL 3747560, at *16 (E.D. La. Dec. 14, 2006).

### 3.    Defendants' Falsity Arguments Fail

Defendants' falsity arguments are unavailing. First, Defendants claim that "Plaintiff's quotation of long passages from SEC filings falls short of the PSLRA's exacting pleading requirements for falsity." Motion at 13-14. This argument, which some courts have characterized as "puzzle pleading," fails. "Although the Tenth Circuit has expressed disapproval of puzzle pleading, *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1339 n.8 (10th Cir. 2012), this district and the Tenth Circuit also recognize the preference for deciding cases on the merits." *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, No. 220CV00368JNPDBP, 2022 WL 716653, at *4 (D. Utah Mar. 9, 2022). Because the Complaint "does not constitute a burdensome puzzle for the court to solve," Defendants' argument fails. *Gelt Trading*, 2022 WL 716653, at *4; *see also In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 22 (S.D.N.Y. 2004) ("Defendants argue that plaintiffs have failed to state the circumstances of the alleged fraud with the requisite particularity and have resorted instead to 'puzzle pleading'-reproducing blocks of text from allegedly deceptive NTL statements without specifying which portions are misleading. The Court disagrees.").[4]

Second, the safe harbor provision of the PSLRA does not insulate Defendants' misrepresentations. Defendants "carry the burden of demonstrating that they are protected by the

---

[4]    Defendants' assertion that the Company's revenue numbers remained unchanged (Motion at 13-14) misses the point because investors analyze other metrics that the Company did restate to make their investment decisions. ¶43. Additionally, Defendants' reliance upon *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008) fails because the court in *Corinthian* held that falsity was lacking based upon less particularized facts. *Id*. at 1069.

7

meaningful cautionary language prong of the safe harbor" of the PSLRA. *Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 247 (2d Cir. 2016). Defendants point to only two disclaimers that they claim constitute meaningful cautionary language: (1) "[t]hese statements are forward-looking and actual results may differ materially;" and (2) "[o]ur failure to implement and maintain effective internal controls over financial reporting could result in errors in our financial statements that could result in a restatement of our financial statements and could cause us to fail to meet our reporting obligations . . . . "[5] However, a "kitchen-sink disclaimer, listing garden-variety business concerns that could affect *any* company's financial well-being" does not constitute "meaningful cautionary language." *Vivendi*, 838 F.3d at 247 (italics in original); *see also In re Facebook, Inc. Sec. Litig.*, No. 22-15077, 2023 WL 8365362, at *11 (9th Cir. Dec. 4, 2023) ("[B]road pronouncements without meaningful acknowledgement of the known risks" do "not suffice to invoke the safe harbor provision."); *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 211 (5th Cir. 2023) ("A similar example of boilerplate language was this disclaimer: statements involve numerous risks, uncertainties and assumptions, and actual results could differ materially from anticipated results."). And, as demonstrated below, Defendants acted with scienter, and therefore the PSLRA's safe harbor provision is inapplicable since Defendants had actual knowledge that the statements were false or misleading. 15 U.S.C. §78u–5(c)(1)(B)(i); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1149 (9th Cir. 2017). Thus, "Defendants' argument based on the adequacy of its disclosures [should

---

[5]    *See* Declaration of Stephen B. Strain in Support of Defendants' Motion to Dismiss Amended Class Action Complaint ("Strain Decl."), Exhibit ("Ex.") 3 a 55; Ex. 4 at 57; Ex. 7 at 3; Ex. 8 at 3 (Motion at 14-15). The paragraphs of the Complaint that Defendants reference (Motion at 15) do not contain meaningful cautionary language regarding the Company's future prospects.

be] rejected." *Voulgaris v. Array Biopharma Inc.*, No. 17-CV-02789-KLM, 2020 WL 8367829, at *18 (D. Colo. Nov. 24, 2020).

Third, Defendants' assertion that their misrepresentations constituted non-actionable puffery also fails. Motion at 14-15. In *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), the Supreme Court affirmed that statements of opinion are actionable if either "the speaker did not hold the belief she professed" or if "the supporting fact she supplied were untrue." *Id*. at 185-86. Importantly, the Court in *Omnicare* held further that opinions, though sincerely held and otherwise true as a matter of fact, may nonetheless be actionable if the speaker omits information whose omission makes the statement misleading to a reasonable investor. *Id*. at 194. Such is the case here. *See, e.g*., *Better v. YRC Worldwide Inc*., No. CIV.A.11-2072-KHV, 2012 WL 4433500, at *6-*7 (D. Kan. Sept. 25, 2012) (holding that misrepresentations that were qualified by phrases such as "we believe" were actionable); *Mishkin v. Zynex Inc.*, No. 09-CV-00780-REB-KLM, 2011 WL 1158715, at *5 (D. Colo. Mar. 30, 2011) ("To the extent these statements are expressions of optimism, such expressions can be actionable when, as alleged here, the defendants were aware of specific facts that undermined materially the basis for the expressions of optimism.").[6]

Finally, Defendants assert that their SOX certifications are not actionable because Defendants did not have actual knowledge that the certifications were false or misleading. Motion at 15. As demonstrated below, however, Defendants acted with scienter. "For these certifications to have any substance, signatories to the certifications must be held accountable for the

---

[6] Defendants' reliance upon *Level 3*, 667 F.3d 1331, *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209 (10th Cir. 2023), and *In re Overstock Sec. Litig.*, No. 2:19-CV-709-DAK-DAO, 2020 WL 5775845 (D. Utah Sept. 28, 2020), is misplaced because unlike here, plaintiffs did not allege particularized facts demonstrating actual knowledge.

statements." *Middlesex Retirement Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1189-1190 (C.D. Cal. 2007). Thus, Plaintiff has adequately alleged falsity.

### B.    Plaintiff Adequately Alleges that Defendants Acted with Scienter

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2); *Tellabs*, 551 U.S. at 314. "Proof of recklessness is sufficient to establish a § 10(b) claim." *Zynex*, 2011 WL 1158715, at *3. Importantly, "courts must consider the complaint in its entirety . . . . The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23 (italics in original).

A strong inference of scienter arises if, "[w]hen the allegations are accepted as true and taken collectively," a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324-26. "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences" – the inference need only be equally plausible to any non-culpable inference. *Id.* at 324. Moreover, "a tie goes to the plaintiffs when there are multiple plausible theories at the pleadings stage of litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014).

#### 1.    The Confidential Witnesses Support a Strong Inference of Scienter

The accounts of the Confidential Witnesses ("CWs") in the Complaint support a strong inference of scienter. "[A]llegations based on the statements of the CWs are entitled to significant weight" where, as here, "the complaint describes the bases of the CWs' knowledge, the positions they held, their exposure to the relevant conduct, and the relevant time frame." *Zynex*, 2011 WL 1158715, at *7.

10

CW1 worked at Inspirato from October 2019 to October 2021, serving as both an Accounting Manager and as a Senior Accounting Manager. ¶33. CW1 stated that one of the biggest problems at the Company was that it built an internal technology without the assistance of anyone in finance or accounting. *Id.* According to CW1, the Company's accounting was materially incorrect for many years. *Id.* CW1 elaborated that CEO Handler believed that he did not have to comply with GAAP, and that as a result, CEO Handler cut corners to get around GAAP compliance and was very comfortable defrauding people through the Company's financial statements. ¶34. For instance, CW1 stated that CEO Handler made the Company's accountants post journal entries into the Company's financial statements so they looked the way he wanted, not how GAAP required. *Id.* As an example, CW1 stated if a new club member had to pay a $20,000 initiation fee, GAAP required it to be recognized over a year. ¶35. According to CW1, however, CEO Handler demanded that the Company recognize all the revenue immediately although his demand did not comply with GAAP. *Id.* CW1 also stated that the Company's finance team manipulated numbers for CEO Handler. *Id.*

CW1 stated further that the Company invented its own currency call "travel perks." ¶37. According to CW1, however, those travel perks were not cash, but the Company was improperly recognizing them as revenue, which CW1 described as fraud. *Id.* CW1 also stated that Inspirato did not have appropriate safeguards for internal controls and processes and that the Company's executives were not using any system controls and did not know the purpose of such controls. *Id.* Furthermore, according to CW1, the personnel at the Company handling the work on ASC 842 did not have the background and experience to properly perform the work. ¶38. CW1 explained that the Company did not have a history of valuing accounting personnel. ¶36.

The account of CW1 is corroborated by the account of CW2, who served at Inspirato as an IT Manager from September 2018 to January 2022 and as an IT and Security Project Manager from November 2021 to January 2023. ¶39. CW2 discovered that during an initial assessment in approximately 2020, Inspirato had systems that the Company did not properly identify as part of its record-keeping process. ¶40. CW2 stated that the Company failed to remedy these determinations, and that no internal controls were implemented to address the findings from the prior assessment. *Id*. CW2 also found that Inspirato had no checks and balances in place to verify manual entries that were made in the Company's financial reporting systems. *Id*.

In 2022, CW2 began working with CFO Neighbor. ¶41. CW2 stated that CFO Neighbor attended meetings in which the participants included various financial teams and owners of apps. *Id*. CW2 stated that CFO Neighbor specifically attended meetings involving the Company's financial department and was extremely involved in meetings and issues that involved financial issues. *Id*.; *see also In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 710 (9th Cir. 2012) (allegations that defendants "were hands-on managers with respect to operational details and financial statements" support a strong inference of scienter). CW2 stressed that Inspirato's executives did not prioritize the Company's internal controls, nor did they prioritize having sufficient qualified personnel to handle the Company's accounting issues. ¶41. CW2 also stated that one of the most challenging teams was Inspirato's finance team because the Company's finance personnel did not properly perform their work. ¶42. Thus, "[t]he CWs are alleged to have personal knowledge of facts that are directly relevant to the scheme alleged in the complaint." *Zynex*, 2011 WL 1158715, at *6.[7]

---

[7]  Contrary to Defendants' assertions (Motion at 6-7, 10-11), these are not conclusory allegations, but rather particularized facts bearing upon Defendants' scienter. And contrary to Defendants'

Defendants' arguments to the contrary fail. Motion at 10-12. First, Defendants claim that because CW1 purportedly left Inspirato six months before the start of the Class Period, this fact "alone dooms CW1's allegations." Motion at 10. On the contrary, confidential witnesses who were "not at [the company] during the Class Period" can nevertheless add to a strong inference of scienter where they "had personal knowledge of executive-level management's real-time access" to company information that demonstrates the false and misleading nature of their statements. *Quality Sys.*, 865 F.3d at 1145; *see also In re Flowers Foods, Inc. Sec. Litig*., No. 7:16-CV-222 (WLS), 2018 WL 1558558, at *15 (M.D. Ga. Mar. 23, 2018) (A witness' "statements are not rendered irrelevant merely because [the witness] was not employed during the Class Period.").[8]

Second, Defendants suggest that the CW accounts cannot be deemed reliable because they purportedly do not bear upon Defendants' scienter. Motion at 10-11. Not so. Defendants ignore CW1's account reflecting on CEO Handler's scienter. ¶¶33-35 and CW2's account bearing upon CFO Neighbor's scienter. ¶41; *see also Zynex*, 2011 WL 1158715, at *6 (rejecting defendants' argument that "none of the CWs was involved in [the company's] accounting, and, thus, they do not have personal knowledge of facts relevant to the defendants' scienter). Indeed, "there is no baseline requirement of [contact with defendants] in order to allege sufficient particularity to

---

suggestion (Motion at 12), Plaintiff relies upon these particularized facts to demonstrate a strong inference of scienter, not merely the positions held by Defendants.

[8] Defendants' cases do not help them. Unlike the case here, in *Rumbaugh v. USANA Health Scis., Inc.*, No. 2:17-CV-106, 2018 WL 5044240 (D. Utah Oct. 17, 2018), the court found that the CW accounts did not demonstrate scienter in part because they "fail to mention any individual defendant." *Id*. at *8. Similarly, *Exkae Ltd. v. Domo, Inc.*, No. 2:19-CV-781-DAK-DAO, 2020 WL 7352735 (D. Utah Dec. 15, 2020) is inapplicable because the CWs there reported about "differences of opinion," (*id*. at *8), whereas the CWs here reported about manipulation of the Company's financial statements and recklessly disregarding the Company's internal controls. *See, e.g.*, ¶¶34, 41. The same is true for *Sorkin, LLC v. Fischer Imaging Corp.*, No. CIV.A. 03-CV-00631-R, 2005 WL 1459735 (D. Colo. June 21, 2005), in which CWs described "careless business practices" (*id*. at *9) rather than the conduct indictive of scienter alleged here.

13

support the probability that a person in the position occupied by the source would possess the information alleged." *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 615–16 (S.D.N.Y. 2015). "When confidential sources consist of persons who from the description of their jobs were in a position to know at first hand the facts, and there is convincing detail to the information they provide, there is reason to credit the informants' reliability." *Six Flags*, 58 F.4th at 208. Thus, the CW accounts support a strong inference of scienter.

### 2. The Severity of the Company's Internal Control Problems Supports a Strong Inference of Scienter

The severity of the Company's internal control problems also supports a strong inference of scienter. Although Defendants are correct that accounting irregularities standing alone do not give rise to a strong inference of scienter (Motion at 6), in the context of other particularized and relevant facts, accounting errors are relevant in evaluating scienter. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1105–06 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003). Here, the Company admitted that: (1) "[w]e have lacked a sufficient number of personnel with the appropriate level of knowledge and experience in the application of GAAP, including the adoption and ongoing accounting for leases under ASC 842, and in the design and implementation of internal controls and have not had the necessary business processes and related internal controls;" (2) "[w]e did not design and maintain effective controls relevant to the preparation of our financial statements with respect to [ITGCs];" and (3) "[w]e did not design and maintain effective controls relevant to the preparation of our financial statements with respect to ITGCs." ¶49. These facts support a strong inference of scienter. *VeriFone*, 704 F.3d at 708-10.

### 3. CFO Neighbor's Departure Bolsters the Strong Inference of Scienter Alleged

The departure of CFO Neighbor adds to the strong inference of scienter alleged. Courts have recognized that such a departure can add one more piece to the scienter analysis. *See, e.g.*,

*In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1299 (N.D. Okla. 2010) ("Defendants' resignations support a strong inference of scienter."). In March 2023, the Company announced that CFO Neighbor would no longer serve as the Company's CFO, and instead would serve as the Company's Chief Strategy Officer. ¶¶53-54. On August 21, 2023, the Company announced further that it had entered into a Separation Agreement with CFO Neighbor. ¶56. CFO Neighbor's departure, moreover, occurred only a few months after the Company announced it would have to restate its financial statements. Thus, this fact adds to the strong inference of scienter alleged. *Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012). When considering these facts collectively – as the Court is required to do under *Tellabs* (551 U.S. at 323) – Plaintiff has adequately alleged scienter. *See Zynex*, 2011 WL 1158715, at *7 ("Considering negative inferences that may be drawn against the plaintiffs, based on the totality of their allegations, I conclude that the inference of scienter suggested by the plaintiffs is strong when compared to reasonable negative inferences.").[9]

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion. Alternatively, if the Court grants any portion of the Motion, Plaintiff respectfully requests leave to amend. *See Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error.").

---

[9]    As Defendants recognize (Motion at 5), "the absence of a motive allegation is not fatal." *Tellabs*, 551 U.S. at 325. Additionally, Plaintiff has adequately pled a primary violation and has also alleged the Individual Defendants' control over the Company. ¶¶8-15; 77-80. Thus, Plaintiff has adequately alleged a control person claim. *Zynex*, 2011 WL 1158715, at *7. Defendants also suggest that Plaintiff attempts to allege a claim under SEC Rules 10b-5(a) and 10b-5(c) because of the language in ¶73 (Motion at 5 n.5), but Plaintiff seeks relief pursuant to SEC Rule 10b-5(b).

Dated:  December 11, 2023  GLANCY PRONGAY & MURRAY LLP

By:  */s/ Ex Kano S. Sams II*
Robert V. Prongay
Ex Kano S. Sams II
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
esams@glancylaw.com
clinehan@glancylaw.com

*Attorneys for Lead Plaintiff Ilan Bouzaglo*

THE LAW OFFICES OF FRANK R. CRUZ
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiff*

16

## PROOF OF SERVICE

I hereby certify that on this 11th day of December, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

_s/ Ex Kano S. Sams II_
Ex Kano S. Sams II