**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00438-RMR-SBP

KEITH KOCH, Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,

v.                                                                    **Oral Argument Requested**

INSPIRATO INCORPORATED, BRENT
HANDLER, and R. WEBSTER
NEIGHBOR,

      Defendants.

---

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT**

---

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.    PLAINTIFF DOWNPLAYS HIS HEIGHTENED PLEADING BURDEN ...................... 2

II.   THE AC DOES NOT RAISE A STRONG INFERENCE OF SCIENTER ...................... 2

      a.    The AC Does Not Plead Motive ................................................................. 3

      b.    The Confidential Witnesses Do Not Support a Strong Inference of Scienter ......... 3

      c.    The Internal Controls Claims Do Not Support a Strong Inference of
            Scienter ................................................................................................... 6

      d.    Mr. Neighbor's Departure Does Not Support a Strong Inference of
            Scienter ................................................................................................... 7

III.  STATEMENTS UNRELATED TO, OR DUPLICATIVE OF, THE
      RESTATEMENTS ARE NOT ACTIONABLE .................................................... 8

CONCLUSION ...................................................................................................................... 10

i

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abady v. Lipocine Inc.*,
    2023 WL 2938210 (D. Utah Apr. 13, 2023) ....................................................................2, 10

*Anderson v. Spirit AeroSystems Holdings, Inc.*,
    827 F.3d 1229 (10th Cir. 2016).......................................................................................3, 4

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
    505 F. Supp. 2d 662 (D. Colo. 2007) ...................................................................................7

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
    963 F. Supp. 2d 1092 (E.D. Wash. 2013) ............................................................................4

*Emps.' Ret. Sys. of R.I. v. Williams Cos.*,
    889 F.3d 1153 (10th Cir. 2018)............................................................................................3

*Exkae Ltd. v. Domo, Inc.*,
    2020 WL 7352735 (D. Utah Dec. 15, 2020) ........................................................................2

*Ho v. Duoyuan Global Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012) ..................................................................................8

*In re Crocs, Inc. Sec. Litig.*,
    774 F. Supp. 2d 1122 (D. Colo. 2011), *aff'd sub nom.*
    *Sanchez v. Crocs, Inc.*, 667 F. App'x 710 (10th Cir. 2016) ............................................6, 7

*In re Flowers Foods, Inc. Sec. Litig.*,
    2018 WL 1558558 (M.D. Ga. Mar. 23, 2018) ......................................................................4

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
    667 F.3d 1331 (10th Cir. 2012).........................................................................................2, 6

*In re Maxwell Techs., Inc. Sec. Litig.*,
    18 F. Supp. 3d 1023 (S.D. Cal. 2014) ................................................................................. 7

*In re Molson Coors Beverage Co. Sec. Litig.*,
    2020 WL 13499995 (D. Colo. Dec. 2, 2020) ...............................................................1, 7, 8

*In re OCA, Inc. Sec. and Derivative Litig.*,
    2006 WL 3747560 (E.D. La. Dec. 14, 2006) .....................................................................10

*In re Proquest Sec. Litig.*,
    527 F. Supp. 2d 728 (E.D. Mich. 2007)..............................................................................10

*In re Quality Sys., Inc. Sec. Litig.*,
      865 F.3d 1130 (9th Cir. 2017) ................................................................................................4

*In re SemGroup Energy Partners, L.P.*,
      729 F. Supp. 2d 1276 (N.D. Okla. 2010) ..............................................................................8

*In re VeriFone Holdings, Inc. Sec. Litig.*,
      704 F.3d 694 (9th Cir 2012) ..................................................................................................6

*In re Zagg, Inc. Sec. Litig.*,
      797 F.3d 1194 (10th Cir. 2015) .............................................................................................8

*Johnson v. Costco Wholesale Corp.*,
      2020 WL 4816225 (W.D. Wash. Aug. 19, 2020), *aff'd sub nom.*
      *Davoli v. Costco Wholesale Corp.*, 854 F. App'x 116 (9th Cir. 2021) ................................6

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems*
      *Holdings, Inc.*,
      2022 WL 377415 (N.D. Okla. Jan. 7, 2022), *aff'd*, 79 F.4th 1209
      (10th Cir. 2023) .....................................................................................................................9

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*,
      761 F.3d 1109 (10th Cir. 2014) .............................................................................................6

*Mishkin v. Zynex Inc.*,
      2011 WL 1158715 (D. Colo. Mar. 30, 2011) .....................................................................3, 5

*Misner v. Potter*,
      2008 WL 410128 (D. Utah Feb. 12, 2008) ...........................................................................6

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
      58 F.4th 195 (5th Cir. 2023) ..................................................................................................5

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
      575 U.S. 175 (2015) .............................................................................................................10

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
      2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ......................................................................10

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
      89 F. Supp. 3d 602 (S.D.N.Y. 2015) .....................................................................................5

*Rumbaugh v. USANA Health Scis., Inc.*,
      2018 WL 5044240 (D. Utah Oct. 17, 2018) ...................................................................3, 4, 8

*Sorkin, LLC v. Fischer Imaging Corp.*,
      2005 WL 1459735 (D. Colo. June 21, 2005) .........................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
      551 U.S. 308 (2007) ...............................................................................................................2

iii

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
672 F. Supp. 2d 596 (S.D.N.Y. 2009) ................................................................................8

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .........................................................................................7, 8

## STATUTES

15 U.S.C. § 78u-5(c)(1) ..............................................................................................................9

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| AC or Complaint or Amended Complaint or ¶ | Amended Class Action Complaint (ECF No. 31) |
| ASC | Accounting Standards Codification |
| CW | Confidential Witness |
| Defendants | Inspirato Incorporated, Brent Handler, and R. Webster Neighbor |
| EBITDA | Earnings Before Interest, Taxes, Depreciation, and Amortization |
| Ex. | Exhibits attached to the Declaration of Stephen B. Strain in Support of Defendants' Motion to Dismiss Amended Class Action Complaint (ECF No. 34) |
| FASB | Financial Accounting Standards Board |
| GAAP | General Accepted Accounting Principles |
| Individual Defendants | Brent Handler and R. Webster Neighbor |
| Inspirato or Company | Inspirato Incorporated |
| ITGCs | Information Technology General Controls |
| Motion or Mot. | Defendants' Motion to Dismiss Amended Complaint (ECF No. 33) |
| Opposition or Opp. | Plaintiff's Opposition To Defendants' Motion to Dismiss Amended Complaint (ECF No. 40) |
| Plaintiff | Ilan Bouzaglo |
| PSLRA | Private Securities Litigation Reform Act of 1995 |

v

| SEC | U.S. Securities and Exchange Commission |
|-----|------------------------------------------|
| SOX | Sarbanes–Oxley Act of 2002 |

### **INTRODUCTION[1]**

Plaintiff's theory is straightforward: Inspirato restated its financial results for two quarters, therefore its executives ***must have*** known of the accounting errors at the time they were made. In essence, Plaintiff seeks to replace the heightened pleading burden for intentional fraud with a strict liability standard, where companies and their officers are *per se* liable for accounting errors, no matter how innocent. Courts have rejected similar efforts: "the mere existence of an error warranting restatement does not necessarily reflect on the scienter behind that error;" "'[t]o hold otherwise would subject every financial restatement to liability.'" *In re Molson Coors Beverage Co. Sec. Litig.*, 2020 WL 13499995, at *4 (D. Colo. Dec. 2, 2020). To state a claim for securities *fraud* based on a restatement, Plaintiff must plead *particularized facts* showing Defendants knew, or were deliberately reckless in not knowing, of the accounting errors at the time they took place. None of Plaintiff's allegations—individually or collectively—come close to meeting this burden.

Plaintiff ignores that the Restatements came with no findings of misconduct, did not materially impact results of operations and had *no* impact on revenues and operating cash flows, resulted in similarly sized understatements of total assets *and* total liabilities, and involved a complex accounting standard Inspirato adopted just months before. He does not challenge that the Company discovered and disclosed the error and implemented remedial measures. There are no allegations of motive. These factors negate any inference of scienter and compel dismissal.

Plaintiff's attempts to expand his claims beyond the restated financials should also be rejected. Defendants do not dispute falsity with respect to the restated financials. Indeed, that is the very purpose of a restatement—to correct errors. Plaintiff's alleged misstatements, however, go beyond the restated lease and accrual accounting errors. A restatement of *certain* financial metrics does not mean *all* prior statements are false. For this reason too, as well as Plaintiff's

---

[1] This Reply uses the same terms and conventions as in Defendants' opening brief. ECF No. 33. Plaintiff filed his opposition brief on December 11, 2023. ECF No. 40. All emphasis is added, and all citations are omitted, unless otherwise noted.

failure to allege falsity as to other non-actionable statements, the AC should be dismissed.

## ARGUMENT

### I.    PLAINTIFF DOWNPLAYS HIS HEIGHTENED PLEADING BURDEN

The Opposition glosses over Plaintiff's significant pleading burden, arguing his allegations need only be "plausible." Opp. at 4. Securities fraud claims, however, are governed by the PSLRA, which imposes the "'most stringent pleading requirement in American civil law.'" *Exkae Ltd. v. Domo, Inc.*, 2020 WL 7352735, at *8 (D. Utah Dec. 15, 2020). The PSRLA requires Plaintiff to plead "with particularity" specific facts showing a materially false or misleading statement made by Defendants with scienter. To plead scienter, Plaintiff must "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). To qualify as "strong," "an inference of scienter . . . '***must be more than merely plausible or reasonable***—it must be cogent and at least a compelling as any opposing inference of nonfraudulent intent.'" *Abady v. Lipocine Inc.*, 2023 WL 2938210, at *23 (D. Utah Apr. 13, 2023). A plaintiff asserting claims under the PSLRA thus "bears a heavy burden at the pleading stage." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012). Plaintiff fails to meet this heavy burden.

### II.    THE AC DOES NOT RAISE A STRONG INFERENCE OF SCIENTER.[2]

The Opposition confirms Plaintiff's failure to plead scienter. The Opposition cites three bases for scienter: (i) the confidential witness claims; (ii) Inspirato's disclosed internal controls deficiencies; (iii) and Mr. Neighbor's departure. Opp. at 10-15. None of these allegations suggests Defendants ***knew or were deliberately reckless in not knowing*** that Inspirato's financial statements contained accounting errors. Rather, they describe matters outside of the relevant time period with no connection to the Restatements. Considered holistically, they fall far short of raising

---

[2] The Opposition concedes the AC does not assert scheme liability claims under SEC Rules 10b-5(a) and 10b-5(c). Opp. at 15, n.9.

the requisite "strong," "cogent," and "compelling" inference of scienter.

### a. The AC Does Not Plead Motive

Plaintiff concedes he has not alleged a motive for securities fraud. Opp. at 15 n.9. The absence of motive may be considered as "a factor mitigating against an inference of scienter." *Anderson v. Spirit AeroSystems Holdings, Inc.*, 827 F.3d 1229, 1238 (10th Cir. 2016); *see also Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1173 (10th Cir. 2018) (while lack of motive does not necessarily defeat scienter, it makes "such a finding more difficult to sustain.").

### b. The Confidential Witnesses Do Not Support a Strong Inference of Scienter

The confidential witness allegations do not give rise to a strong inference of scienter. As explained in the Motion, CW1 left Inspirato *six months* before the class period—before Inspirato was a public company, before Inspirato adopted ASC 842, and before Inspirato issued the financial statements at issue. Mot. at 10. CW2 had no role in Inspirato's accounting or finance departments, let alone accounting decisions relevant to the Restatements. Mot. at 11. And neither confidential witness reported to Messrs. Handler or Neighbor or is alleged to have had *any* contact with them regarding the relevant accounting decisions. The Opposition does not contest these incontrovertible flaws. Instead, Plaintiff merely repeats the CWs' irrelevant allegations.

*CW1.* Plaintiff concedes that to be afforded significant weight, confidential witness allegations must describe the witness' "exposure *to the relevant conduct*[] and *the relevant time frame*." Opp. at 10 (quoting *Mishkin v. Zynex Inc.*, 2011 WL 1158715, at *7 (D. Colo. Mar. 30, 2011)). CW1 provides neither. CW1 left Inspirato well before any of the alleged misstatements; therefore, they *cannot* describe their exposure to the "relevant conduct" during the "relevant time frame."[3] Courts take a skeptical view of confidential witnesses not employed during the relevant class period. Mot. at 10 (citing *Rumbaugh v. USANA Health Scis., Inc.*, 2018 WL 5044240, at *8

---

[3] Plaintiff states that CW1 "purportedly" left Inspirato six months before the start of the class period. Opp. at 13. There is nothing "purported" about that—the AC alleges CW1 worked at Inspirato until October 2021. ¶ 33. The putative class period begins on May 11, 2022. ¶ 1.

(D. Utah Oct. 17, 2018) and other authority). Plaintiff attempts to distinguish these cases on the facts (Opp. at 13 n.9), but fails to refute the core principle underlying courts' distrust of pre-class period accounts: "[a]ny inference that pre-Class Period practices continued during the Class Period amounts to unsubstantiated speculation." *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1135 (E.D. Wash. 2013); *see also Anderson*, 827 F.3d at 1240 ("plaintiffs do not identify any particularized account showing that the two executives ***knew during the class period*** that the progress reports were inaccurate.").[4]

CW1's allegations are also insufficient because they are either irrelevant, conclusory and/or lack indicia of personal knowledge. *See* Mot. at 10. The Opposition does not explain how CW1's pre-class period allegations connect to the technical accounting errors that were restated— *i.e.*, the "relevant conduct." Opp. at 10-14; *USANA*, 2018 WL 5044240, at *8 (rejecting witness allegations regarding contact with individual defendant where there were no allegations that contact "pertained to any of the matters alleged in the complaint."). For example, Plaintiff repeats CW1's allegation that Inspirato built an "internal technology" without the assistance of finance or accounting personnel. Opp. at 11. What this "internal technology" was, when it was built, or how it impacted Inspirato's accounting are anyone's guess. CW1's non-specific and temporally untethered accounting allegations likewise fail.[5] Critically, all of these allegations lack specific facts linking them to the alleged misstatements. Courts consistently reject similar conclusory

---

[4] Plaintiff's cases are distinguishable. Opp. at 13. In *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017), the confidential witness described executives' "real-time" access to Salesforce reports relevant to class period statements. CW1's allegations say nothing about Defendants' access to information relevant to the later Restatements. ¶¶ 33-38. *In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *2 (M.D. Ga. Mar. 23, 2018) concerned statements from Flowers Foods' former CFO, who *testified under oath* that he warned management of issues at the heart of the purported false statements.

[5] These include: Mr. Handler "cut corners to get around GAAP compliance;" lack of "appropriate safeguards for internal controls" and executives "did not know the purpose of such controls;" "manipulated numbers;" and the "Company did not have a history of valuing accounting personnel." Opp. at 11-12.

allegations.[6] In the rare instances where CW1 provides a veneer of specificity, it concerns metrics unrelated to the restated lease and accrual accounting. Indeed, the only supposed accounting improprieties alleged by CW1 concern revenue that could only have been recognized prior to Inspirato going public (if at all). ¶¶ 35-37 (describing CW1's allegations regarding "travel perks" and initiation fees). Crucially, CW1 does not state when the revenue was recognized, by whom, or in what amounts. But even if they did, it would have no bearing on the alleged misstatements, as Plaintiff concedes ***revenue was not restated in Q1 and Q2 2022***. Opp. at 7 n.4. CW1 also claims that "personnel at the Company handling the work on ASC 842 did not have the background and experience to properly perform the work," but Inspirato did not adopt ASC 842 until January 2022—after CW1 had left. *See generally* Opp. at 10-14; Mot. at 3, 10. Moreover, CW1 does not provide the ***basis*** for that statement or allege any connection to either individual defendant. *Id.*

   ***CW2.*** The Opposition tries to rescue CW1's deficient, pre-class period allegations through "corroborat[ion]" by CW2. Opp. at 12. CW2, however, was an IT professional with no knowledge of the accounting decisions at issue. Mot. at 11-12. Moreover, while CW2 was employed during the class period, many of their allegations, like CW1, concern non-specific pre-class period events. Opp. at 12 (describing 2020 initial assessment of unspecified company "systems"). CW2's other allegations lack supporting explanation, such as the conclusory claim that no "checks and balances" existed to verify manual entries. Mot. at 11. Furthermore, conclusory allegations such

---

[6] Mot. at 10-11; *Sorkin, LLC v. Fischer Imaging Corp.*, 2005 WL 1459735, at *9-10 (D. Colo. June 21, 2005) (no scienter from conclusory statements that defendant "put quality control on the back burner" or was "dismissive" of problems). Unlike here, in each of Plaintiff's authorities, the CWs were alleged to have (i) knowledge of practices directly bearing on the alleged misstatements, and/or (ii) described the individual defendants' involvement in those practices. *See Zynex*, 2011 WL 1158715, at *6 (defendant involvement in billing practices); *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 610, 615-16 (S.D.N.Y. 2015) (defendant involvement in deals forming the basis of revenue recognition allegations); *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 208 (5th Cir. 2023) (personal knowledge of timing of construction projects forming the basis of alleged misstatements). Unlike those cases, the CWs here are not alleged to have personal knowledge of the underlying accounting decisions, and do not describe Messrs. Handler and Neighbor's involvement in them.

as "executives did not prioritize the Company's internal controls" are routinely rejected.[7]

Plaintiff asks the Court to infer scienter from Mr. Neighbor's "extreme[]" involvement "in meetings and issues that involved financial issues." Opp. at 12. All this allegation shows is that Mr. Neighbor—like all responsible CFOs—attended finance meetings. As the Tenth Circuit explained, "nothing in the defendants' routine attendance at finance meetings serves to suggest a 'cogent' and 'compelling' inference of scienter." *MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109, 1122 (10th Cir. 2014); *Cf. Level 3*, 667 F.3d at 1344 (monitoring of a program "through regular meetings and reports" did not establish scienter). It certainly does not show knowledge of facts relevant to any alleged "'scheme.'" Opp. at 12.[8]

### c.  The Internal Controls Claims Do Not Support a Strong Inference of Scienter

Plaintiff concedes that accounting irregularities alone do not give rise to a strong inference of scienter. Opp. at 14; Mot. at 6. Furthermore, the Opposition does not address Defendants' arguments that (i) there are no allegations of contemporaneous knowledge of accounting errors, (ii) the Individual Defendants (or others) were not implicated in any misconduct, and (iii) the technical nature and impact of the errors weigh against scienter.[9]

Plaintiff's sole restatement-based scienter argument rests on the Company's internal controls disclosures. Opp. at 14. Courts routinely reject scienter arguments based on an after-the-

---

[7] Mot. at 11 (citing *Johnson v. Costco Wholesale Corp.*, 2020 WL 4816225, at *5 (W.D. Wash. Aug. 19, 2020), *aff'd sub nom. Davoli v. Costco Wholesale Corp.*, 854 F. App'x 116 (9th Cir. 2021)). The same is true of CW2's claim that "finance personnel did not properly perform their work." Mot. at 11. Plaintiff offers no details concerning the basis for these alleged "facts," including what timeframe they relate to, which executives were aware of the purported issues, or what the work consisted of. *See* Opp. at 12-13; *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1149 (D. Colo. 2011) (rejecting allegations regarding acts and of unnamed "executives"), *aff'd sub nom. Sanchez v. Crocs, Inc.*, 667 F. App'x 710 (10th Cir. 2016).

[8] *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (9th Cir 2012), involved starkly different facts. Relying on internal documents and SEC interview transcripts, defendants were alleged to have had access to projections that directly contradicted their public statements. *Id.* at 704-06.

[9] Plaintiff thus concedes these points. *Misner v. Potter*, 2008 WL 410128, at *3 (D. Utah Feb. 12, 2008) (plaintiff "concedes this point by his failure to address it in his opposition brief.").

6

fact conclusion that internal controls were ineffective. *See, e.g.*, *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1039-40 (S.D. Cal. 2014) (restatement may suggest internal controls were ineffective, but that is not enough to demonstrate defendants acted with scienter). Moreover, the Company had already disclosed material weaknesses in internal controls concerning ITGCs and a lack of sufficient personnel "with the appropriate level of knowledge and experience in the application of GAAP." Mot. at 3-4, 9. Plaintiff fails to explain how material weaknesses *disclosed* in the originally issued financial statements are indicative of scienter. *See Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 678-79 (D. Colo. 2007) ("it is difficult to conceive of how Plaintiff can rely upon the Company's public disclosures of corporate deficiencies to support its allegation that Red Robin intentionally misled the public."). Indeed, Defendants responded to these deficiencies by implementing a remediation plan (Mot. at 3, 9; ¶¶ 29, 31), which *weighs against* scienter. *See, e.g.*, *Crocs*, 774 F. Supp. 2d at 1147 (efforts "to remedy the various problems [company] was encountering is also inconsistent with a strong inference of scienter.").

### d.  Mr. Neighbor's Departure Does Not Support a Strong Inference of Scienter

Plaintiff does not refute that Mr. Neighbor remained at Inspirato after the Restatements, his role change was amicable, and he did not leave until nine months after the Company announced it would restate results. *Compare* Mot. at 12, *with* Opp. at 14-15.[10] To support scienter, executive departures must be accompanied by particularized allegations explaining why the departures were suspicious. *See, e.g., Molson*, 2020 WL 13499995, at *11. Plaintiff relies only on the timing of Mr. Neighbor's departure. Opp. at 15. But "[m]ere conclusory allegations" that an employee "resigns or retires during the class period or shortly before the corporation issues its restatement, without more, cannot support a strong inference of scienter." *Zucco Partners, LLC v. Digimarc*

---

[10] The claim that Mr. Neighbor's "departure … occurred only a *few months* after the Company announced it would have to restate its financial statements" is contradicted by the AC, which alleges Mr. Neighbor left nine months after the announcement. Plaintiff does not address Defendants' scienter arguments regarding executive positions and other post-class period events. *Compare* Mot. at 12-13, *with* Opp. at 10-15.

*Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009). Not surprisingly, courts reject scienter allegations based on similarly timed departures following restatements. *See, e.g.*, *Molson*, 2020 WL 13499995, at *11 (CEO; five months post-restatement).[11] Allegations of departures "will 'never' be as compelling" as the alternative—that the employees left for "'unrelated personal or business reasons.'" *USANA*, 2018 WL 5044240, at *9.[12]

### III.   STATEMENTS UNRELATED TO, OR DUPLICATIVE OF, THE RESTATEMENTS ARE NOT ACTIONABLE

Contrary to Plaintiff's assertions (Opp. at 5-6), Defendants are not contesting falsity as to the *restated* portions of the financial statements.[13] The AC, however, goes much further: it alleges false statements on wide-ranging topics entirely *unrelated* to the Restatements. Inspirato did *not* revise every reported financial metric and statement in its Q1 and Q2 2022 quarterly reports; it restated the portions impacted by the lease accounting and accrual errors announced in November 2022. The AC acknowledges this. ¶ 49 (describing subset of amended items in Q1 2022 Form 10-Q). The AC is premised on the falsity of the <u>Restatements</u>. Mot. at 13. But a restatement of prior results does not make *all* statements in the prior filings false.[14] Plaintiff's overreach is most clearly illustrated by the alleged false statements concerning Inspirato's reported revenue in Q1 and Q2

---

[11] Even a "forced resignation" may not be "an indicator that fraudulent intent existed" at the time of alleged misstatements. *See In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1205 (10th Cir. 2015).

[12] Plaintiff's reliance on *In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1299 (N.D. Okla. 2010) is misplaced, as the individuals there were allegedly "ousted" "immediately before" the company filed for bankruptcy and invoked their Fifth Amendment privilege against self-incrimination during an investigation relating to the company's practices. In *Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012), the court acknowledged that a resignation alone is insufficient to allege scienter, but credited it in conjunction with other scienter allegations absent here.

[13] Defendants' arguments concerning the errors' technical nature and financial impact concern *scienter*, not falsity. *See* Mot. at 8-9. As discussed *supra*, Plaintiff does not respond to these scienter arguments.

[14] Plaintiff's authority is in accord. In *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 603, 606 (S.D.N.Y. 2009), the alleged misstatements concerned restated metrics.

2022. ¶¶ 28, 30. Yet revenue *did not change as a result of the restatements*. Mot. at 14. The Opposition concedes this (as it must). Opp. at 7 n.4. Confusingly, Plaintiff claims Defendants' revenue argument "misses the point because investors *analyze other metrics that the Company did restate*." That is precisely the point—the potentially actionable statements are "the metrics that the Company did restate," which *do not include* revenue.[15]

   *Forward-Looking Guidance/Internal Controls.* Defendants showed that statements concerning Inspirato's revenue and adjusted EBITDA guidance are prototypical examples of forward-looking statements protected by the PSLRA's safe harbor. Mot. at 14. Plaintiff does not address the meaningful cautionary that accompanied the guidance. Ex. 7 at 3, 7; Ex. 8 at 3, 8.[16] This ends the inquiry. 15 U.S.C. § 78u-5(c)(1)(A)-(B). Instead, Plaintiff attacks a strawman by arguing Inspirato's *internal controls* statements were not protected by the safe harbor. Opp. at 8. Defendants never advanced this argument: they argued the internal controls statements were consistent with the Restatements, and therefore not false. Mot. at 15. While the restated reports described the impact of the accounting errors on internal controls, that does not render the prior internal controls disclosures false. *Id.* Plaintiff does not respond to this argument.

   *SOX Certifications.* Messrs. Handler and Neighbor's SOX certifications are not actionable because the AC fails to plead facts showing Defendants "had actual knowledge those SOX certifications were false or misleading" when made. Mot. at 15 (quoting *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 2022 WL 377415, at *15 (N.D. Okla. Jan. 7, 2022), *aff'd*, 79 F.4th 1209 (10th Cir. 2023)). Plaintiff argues these certifications were false because Inspirato later announced its disclosure controls and procedures remained ineffective. Opp. at 6, 9. But that post-class period disclosure says nothing about what the Individual

---

[15] Plaintiff's inability to identify the challenged misstatements exemplifies why the AC's use of long block quotations falls short of the PSLRA's requirements for pleading falsity. *See* Mot. at 13.

[16] Even if the Court were to evaluate actual knowledge, which it need not do, the AC contains no allegations regarding the Individual Defendants' mental states with respect to the guidance.

Defendants *knew at the time* they signed the certifications.[17]

*Non-Actionable Puffery.* The Motion explained that high-level statements of corporate optimism, such as "[o]ur results . . . demonstrated the many ways Inspirato offers incredible value to its subscribers" (¶ 30), qualify as non-actionable puffery. Mot. at 14.[18] The Opposition fails to explain how non-specific, loosely optimistic statements like these are actionable, let alone relevant. Opp. at 9. Plaintiff's only counter (*id.*) misstates the law, conflating puffery with statements of opinion, which are two distinct areas of federal securities law.

*Opinion Statements.* Plaintiff concedes that certain of the alleged misstatements are opinions, but fails to explain *why* those statements are actionable. He merely describes the test for analyzing opinion statements under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). *Id.* What critical information was omitted from the statement "we believe that these non-GAAP financial measures provide useful information"? ¶¶ 28, 30. The Opposition does not specify—and there is no explanation in the AC. Mot. at 14-15.

In sum, Plaintiff does not meaningfully respond to Defendants' falsity arguments.

### CONCLUSION

For the reasons above and in the Motion, the AC should be dismissed in its entirety.

---

[17] Plaintiff's authorities are inapposite. In *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821, at *12 (S.D.N.Y. Apr. 14, 2020), the court premised falsity on a violation of Item 303 of Regulation S-K, which is irrelevant here. In *In re Proquest Sec. Litig.*, 527 F. Supp. 2d 728, 742-45 (E.D. Mich. 2007), the court found that defendants advanced contradictory arguments that (i) their certifications were truthful, but (ii) accounting improprieties resulted from a rogue employee exploiting *deficient controls*. Inspirato disclosed its ineffective controls. In *In re OCA, Inc. Sec. and Derivative Litig.*, 2006 WL 3747560, at *13-16 (E.D. La. Dec. 14, 2006), defendants alleged to have known that remedial measures were not undertaken and failed to disclose material weaknesses to the outside auditor. The AC does not allege similar facts.

[18] *Abady*, 2023 WL 2938210, at *15 ("It is well established that statements that are 'mere puffing' and 'not capable of objective verification' are immaterial for purposes of §10(b) liability").

Dated: January 12, 2024

Respectfully submitted,

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

*/s/ Ignacio E. Salceda*
Ignacio E. Salceda
Stephen B. Strain
650 Page Mill Road
Palo Alto, CA  94304-1050
Telephone: (650) 493-9300
Fax: (866) 974-7329
Email: isalceda@wsgr.com
Email: sstrain@wsgr.com

*Attorneys for Defendants Inspirato Incorporated,
Brent Handler, and R. Webster Neighbor*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January, 2024, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notification filing to all

registered participants.

/s/ Ignacio E. Salceda

12