**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

KEITH KOCH, Individually and on Behalf of
All Others Similarly Situated,
                              Plaintiff,
          vs.


INSPIRATO INCORPORATED, BRENT
HANDLER, AND R. WESTER NEIGHBOR,

                    Defendants.

Civil Action No. 1:23-cv-00438-RMR-SBP

---

**PLAINTIFF'S OBJECTION TO THE RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE REGARDING DEFENDANTS' MOTION TO DISMISS**

---

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................................... 2

        A.      Background ................................................................................................. 2

        B.      The Company's Restatement and Post Class Period Events ................................. 3

III.    STANDARD OF REVIEW ...................................................................................... 5

IV.     THE RECOMMENDATION INCORRECTLY HELD THAT PLAINTIFF HAD NOT
        ADEQUATELY ALLEGED SCIENTER UNDER THE EXCHANGE ACT .................. 6

        A.      The Recommendation Improperly Focused Almost Exclusively Upon Knowledge
                to Demonstrate Scienter and Virtually Ignored an Analysis Based Upon
                Recklessness, Which Is Sufficient to Demonstrate Scienter ................................. 7

        B.      The Recommendation Improperly Drew Inferences in Defendants' Favor.......... 11

        C.      The Recommendation Improperly Concluded That Motive is Required to
                Adequately Allege Scienter ................................................................................. 13

V.      ALTERNATIVELY, PLAINTIFF RESPECTFULLY REQUESTS LEAVE TO
        AMEND ................................................................................................................. 14

VI.     CONCLUSION....................................................................................................... 14

## TABLE OF AUTHORITIES

<u>CASES</u>

*Adams v. Kinder-Morgan, Inc.*,
   340 F.3d 1083 (10th Cir. 2003) ...................................................................................... 6, 8, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................ 5

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)................................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................................... 5, 6, 12

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) .................................................................................................. 7

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .............................................................................................. 14

*In re Gold Res. Corp. Sec. Litig.*,
   776 F.3d 1103 (10th Cir. 2015) .......................................................................................... 7, 8

*In re Sonus Networks, Inc. Sec. Litig.*,
   No. Civ.A.04-10294-DPW, 2006 WL 1308165 (D. Mass. May 10, 2006)............................. 10

*In re Sipex Corp. Sec. Litig.*,
   No. C 05-00392 WHA, 2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) .................................. 11

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) ................................................................................................ 10

*Jones v. Corus Bankshares, Inc.*,
   701 F. Supp. 2d 1014 (N.D. Ill. 2010) ................................................................................. 10

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)................................................................................................................ 13

*Mishkin v. Zynex Inc.*,
   No. 09-CV-00780-REB-KLM, 2011 WL 1158715 (D. Colo. Mar. 30, 2011)........................ 13

*Norfolk County Retirement Sys. v. Ustian*,
   No. 07 C 7014, 2009 WL 2386156 (N.D. Ill. July 28, 2009) ................................................. 12

*Pasternack v. Shrader*,
   863 F.3d 162 (2d Cir. 2017)............................................................................................. 14

*Pirraglia v. Novell, Inc.*,
   339 F.3d 1182 (10th Cir. 2003) ................................................................... 6, 8, 12, 13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)...................................................................................... 5, 6, 7, 13

*Ulbricht v. Ternium S.A.*,
   No. 18CV6801PKCRLM, 2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020)............................... 14

STATUTES

15 U.S.C. §78j(b) ......................................................................................................... 6

15 U.S.C. §78u-4(b)(2) ................................................................................................ 6

28 U.S.C. §636(b)(1)(C) ............................................................................................. 5

RULES

Fed. R. Civ. P. 12(b)(6)................................................................................................ 5

Fed. R. Civ. P. 72 ................................................................................................... 1, 5

REGULATIONS

17 C.F.R. §240.10b-5(b) .......................................................................................... 1, 6

**I.    INTRODUCTION**

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Lead Plaintiff Ilan Bouzaglo ("Plaintiff") respectfully objects to the Recommendation of United States Magistrate Judge ("Recommendation") (Doc. 48) Regarding Defendants' Motion to Dismiss ("Motion") in this securities class action.[1]  The Recommendation determined that Plaintiff did not adequately plead scienter pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5(b)), and the Private Securities Litigation Reform Act of 1995 ("PSLRA").[2]

While Plaintiff appreciates the thorough analysis embodied with the Recommendation, Plaintiff respectfully objects to the Recommendation for three primary reasons.  First, the Recommendation improperly focused almost exclusively upon knowledge to adequately allege scienter under the Exchange Act, which negatively colored the Recommendation's analysis of recklessness as sufficient to demonstrate scienter.  Second, the Recommendation drew inferences in Defendants' favor, which is improper at the pleading stage.  Third, the Recommendation also improperly concluded that motive is required to adequately allege scienter.

Finally, and alternatively, Plaintiff also respectfully suggests that if the Court were to adopt the Recommendation, that Plaintiff should be granted leave to amend.

---

[1] Defendants are Inspirato Incorporated ("Inspirato" or the "Company"), Chief Executive Officer ("CEO") Brent Handler ("Handler") and Chief Financial Officer ("CFO") R. Webster Neighbor ("Neighbor") (collectively "Defendants."). Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

[2] The Recommendation states that "Defendants' motion challenges the sufficiency of the Plaintiffs' allegations as to the scienter element."  Doc. 48 at 6.  Thus, the element of falsity is not in dispute.

## II.    STATEMENT OF FACTS

### A.    Background

Inspirato is a travel subscription company that claims to provide unique solutions for: (1) affluent travelers seeking superior service and certainty across a wide variety of accommodations and experiences; and (2) hospitality suppliers who want to solve pain points that include monetizing excess inventory and efficiently outsourcing the hassle involved in managing rental properties. ¶17.[3]  The Company's portfolio was accessed through its subscription platform. ¶19. The Company offered three subscriptions: (1) Inspirato Club; (2) Inspirato Pass; and (3) Inspirato Select. *Id.*  Inspirato Club subscribers paid an enrollment fee and monthly or annual subscription for access to the Company's portfolio of branded Inspirato luxury vacation homes, luxury hotels, and five-star resort partners, Inspirato Only experiences, and custom Bespoke itineraries. ¶20. Inspirato Pass subscribers paid an enrollment fee and a monthly or annual subscription that was inclusive of nightly rates, taxes, and fees for Pass trips. ¶21.  Inspirato Select subscribers paid an enrollment fee and annual subscription. ¶22.

The Company represented that all three subscriptions offered travelers: (1) the ability to book trips of their choice up to one year in advance; (2) the purported full Inspirato service experience; and (3) access to Inspirato benefits. ¶23.  The Company represented that since its founding, it developed a highly flexible, asset-light approach to controlling and managing its residences. ¶27.  Inspirato claimed that the central tenet of this approach is that it leased its homes, paying the owners fixed rental income, rather than buying them. *Id.*

---

[3]    Unless indicated otherwise, all paragraph ("¶") references are to Plaintiff's Amended Class Action Complaint for Violation of the Federal Securities Laws ("Complaint").

**B.     The Company's Restatement and Post Class Period Events**

On November 14, 2022, the Company announced the following:

On November 8, 2022, the Audit Committee (the "Audit Committee") of the Board of Directors of Inspirato Incorporated (the "Company") concluded, after discussion with the Company's management, that the Company's unaudited condensed consolidated financial statements as of and for the quarterly periods ended March 31, 2022 and June 30, 2022 (collectively, the "Non-Reliance Periods") included in the Quarterly Reports on Form 10-Q filed with the [SEC] for the Non-Reliance Periods, should no longer be relied upon.

¶43.  The Company announced further:

This is due to the incorrect application of Accounting Standards Update (ASU) No. 2016-02, Leases (Topic 842) ("ASC 842") with respect to the assessment of right-of-use assets and liabilities, resulting in an understatement of both right-of-use assets and total lease liabilities of approximately 9% for each of the Non-Reliance Periods resulting in an understatement of total assets and total liabilities by approximately 5% for each of the Non-Reliance periods, and due to property-related and other expenses being under accrued in the first quarter, and over accrued in the second quarter, resulting in cost of revenue being understated by approximately 1% and overstated by approximately 5% in the first and second quarter, respectively. Similarly, any previously issued or filed reports, press releases, earnings releases, and investor presentations or other communications describing the Company's condensed consolidated unaudited financial statements and other related financial information covering the Non-Reliance Periods should no longer be relied upon.

* * *

In connection with the restatements discussed above, the Company's management has re-evaluated the effectiveness of the Company's disclosure controls and procedures as of March 31, 2022 and June 30, 2022 and based on that evaluation, the Company's management has concluded its disclosure controls and procedures remained ineffective due to the unremediated material weaknesses previously disclosed in Item 4 "Controls and Procedures" in the Company's Quarterly Reports on Form 10-Q filed with the SEC for the Non-Reliance Periods. Management is developing a remediation plan for the material weaknesses.

*Id.*

On the same day, the Company also announced that it would not be able to file its Form 10-Q for the quarter ended September 30, 2022.  ¶44.  On this news, Inspirato's stock price fell 12%.

3

¶45.  On November 23, 2022, the Company disclosed its receipt of a Notice from NASDAQ.  ¶46.

On this news, Inspirato's stock price fell more than 3%.  ¶48.

Then, on December 15, 2022, the Company announced, among other things, that:

As disclosed in the Company's Current Report on Form 8-K, filed with the SEC on November 14, 2022, the Restatement is to correct errors that resulted from (i) the incorrect application of Accounting Standards Update (ASU) No. 2016-02, Leases (Topic 842) ("ASC 842") with respect to the assessment of right-of-use assets and lease liabilities and (ii) the under accrual of liabilities and property related and other expenses as of March 31, 2022. The incorrect application of ASC 842 led to an understatement of $25 million of the right-of-use assets and total lease liabilities as of March 31, 2022. Separately, property-related and other expenses were understated by $0.3 million during the three-months ended March 31, 2022… In connection with the Restatement, the Company's management concluded that as of March 31, 2022, its disclosure controls and procedures remained ineffective at a reasonable assurance level due to the unremediated material weaknesses in its internal control over financial reporting previously disclosed in Part I, Item 4. "Controls and Procedures" of the Original Report…

\* \* \*

- We have lacked a sufficient number of personnel with the appropriate level of knowledge and experience in the application of GAAP, including the adoption and ongoing accounting for leases under ASC 842, and in the design and implementation of internal controls and have not had the necessary business processes and related internal controls.

\* \* \*

- We did not design and maintain effective controls relevant to the preparation of our financial statements with respect to information technology general controls ("ITGCs").

\* \* \*

- We did not design and maintain effective controls relevant to the preparation of our financial statements with respect to ITGCs.

¶49.  On this news, Inspirato's stock price fell 7%.  ¶50.

On January 18, 2023, the Company announced a plan to streamline operations, including

a workforce reduction, that impacted approximately 12% of the Company's staff.  ¶52.

Subsequently, on May 3, 2023, the Company received a notice from NASDAQ that the Company was not in compliance with Nasdaq's Listing Rule 5450(a)(1).  ¶55.[4]

## III.    STANDARD OF REVIEW

Pursuant to Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. §636(b)(1)(C), this Court reviews *de novo* the portions of the Recommendation to which a party objects.  In so doing, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §636(b)(1)(C).  The Court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id*.

A plaintiff's allegations need only be "plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[5]  Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular,

---

[4] The Recommendation notes correctly that "subsequent filings and public statements caused the stock to decline further" and that "[t]hese subsequent declines appear to relate to the same accounting issues . . . ."  Doc. 48 at 3.

[5]     Apparently mirroring Defendants' incorrect contention that Plaintiff "downplays" the applicable heightened pleading burden (Doc. 41 at 2), the Recommendation states that "[t]he requirement of a 'strong' inference of scienter elevates the plaintiff's pleading burden for that element over the normal 'plausibility' standard of Fed. R. Civ. P. 12(b)(6) and cases like *Iqbal*." Doc. 48 at 6.  Although the PSLRA did, in fact, impose a heightened pleading standard upon Exchange Act claims, the plausibility standard, however, did not become irrelevant as Defendants incorrectly suggested.  Doc. 41 at 2.  Rather, plausibility is incorporated into the heightened pleading standard.  As the Supreme Court has declared, "[t]o determine whether the plaintiff has alleged facts that give rise to the requisite strong inference of scienter, a court must consider *plausible*, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323–24 (2007).

5

documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322.

Additionally, a court is not free to dismiss based on its "disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 555-56. Rather, courts must engage in a "comparative assessment of plausible inferences, ***while constantly assuming the plaintiff's allegations to be true***." *Tellabs*, 551 U.S. at 326-27. Additionally, courts must view the alleged facts "in the light most favorable to the nonmoving party." *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1187 (10th Cir. 2003); *see also Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1088 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003) (holding that courts must accept all well-pleaded facts as true).

## IV.     THE RECOMMENDATION INCORRECTLY HELD THAT PLAINTIFF HAD NOT ADEQUATELY ALLEGED SCIENTER UNDER THE EXCHANGE ACT

Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. §78j(b). SEC Rule 10b-5 implements this provision by making it unlawful to, among other things, "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. §240.10b-5(b). Section 10(b) "affords a right of action to purchasers or sellers of securities injured by its violation." *Tellabs*, 551 U.S. at 318.

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2); *Tellabs*, 551 U.S. at 314. In the Tenth Circuit, the required state of mind is "intent to defraud ***or*** recklessness." *Adams*, 340 F.3d at 1095. Importantly, "courts must consider the complaint in its

6

entirety . . . .  The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23 (italics in original).  A strong inference of scienter arises if, "[w]hen the allegations are accepted as true and taken collectively," a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324-26.  "The inference that the defendant acted with scienter need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences" – the inference need only be equally plausible to any non-culpable inference. *Id.* at 324.  Moreover, "a tie goes to the plaintiffs when there are multiple plausible theories at the pleadings stage of litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014).

> A.    **The Recommendation Improperly Focused Almost Exclusively Upon Knowledge to Demonstrate Scienter and Virtually Ignored an Analysis Based Upon Recklessness, Which Is Sufficient to Demonstrate Scienter**

Although the Recommendation correctly acknowledged that the requisite standard to adequately allege scienter for Exchange Act claims in the Tenth Circuit is intent to defraud ***or*** recklessness (Doc. 48 at 6 (citing *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103 (10th Cir. 2015)), the Recommendation's subsequent analysis improperly focused almost exclusively upon knowledge to demonstrate scienter and virtually ignored recklessness as satisfactory to demonstrate scienter.  For instance, the Recommendation stated that "a fair reading of the Amended Complaint indicates that it falls closer to the *Gold Resource* example, alleging GAAP violations but not tying those violations to any broader scheme or more detailed assertions of ***knowledge*** that would permit a reasonable inference of the Defendants' scienter."

Recommendation at 9.[6]  The Recommendation also held that "[n]or do Plaintiffs [sic] assert the kinds of facts that *Adams* found to warrant an inference that the defendants **knew** the statements they were making were false." *Id*. at 10.  The Recommendation stated further that "Plaintiffs [sic] offer no direct evidence of any Inspirato official having actual (or even constructive) **knowledge** that the company's accounting for its leases violated ASC 842 and GAAP." *Id*. at 10.

By focusing almost exclusively upon intent to defraud to satisfy the scienter requirement, the Recommendation's analysis, respectfully, was skewed against Plaintiff.  Indeed, rather than viewing the allegations through the prism of recklessness – which the Recommendation acknowledged is sufficient to adequately allege scienter – the Recommendation instead analyzed the allegations through the lens of intentional conduct.  As the Tenth Circuit has repeatedly declared, courts must view the alleged facts "in the light most favorable to the nonmoving party." *Pirraglia*, 339 F.3d at 1187; *Adams*, 340 F.3d at 1088. (10th Cir. 2003).  As a result, the Recommendation's focus upon knowledge as the criterion to demonstrate scienter negatively impacted the Recommendation's analysis of recklessness as a factor to adequately allege scienter, thereby failing to view the alleged facts in the light most favorable to Plaintiff.

For instance, this analysis negatively affected the Court's evaluation of the allegations based upon the Confidential Witnesess ("CWs").  The Recommendation stated that "[e]vidence from witnesses within the company that shed light on defendants' **knowledge** of financial

---

[6] Although the Recommendation relied heavily upon *Gold*, the facts there are substantially different from those here.  For instance, in *Gold*, the court held that "the variances showing up between their weighing of concentrate compared to the buyer's weighing because they thought the buyers' figures were wrong." *Gold*, 776 F.3d at 1114. Here, however, CW1 stated that CEO Handler believed that he did not have to comply with GAAP, CEO Handler cut corners to get around GAAP compliance and was very comfortable defrauding people through the Company's financial statements. ¶34. CW1 stated further that CEO Handler made the Company's accountants post journal entries into the Company's financial statements so they looked the way he wanted, not how GAAP required. *Id*.

8

irregularities and false statements can certainly help support an inference of scienter." Recommendation at 12. The Recommendation also held – without citing any authority – that "to support the inference of scienter, the evidence from co-workers must be such that it reflects on the defendants' *knowledge* of the facts underlying the specific misrepresentations at issue." *Id*. at 13. Further, the Recommendation stated that "Plaintiffs' [sic] allegations concerning the two Confidential Witnesses do not speak directly to either Mr. Handler's or Mr. Neighbor's *knowledge* (or anyone else's) that Inspirato was misapplying GAAP and misrepresenting the revenue relating to the leases." *Id*. at 13. Moreover, the Recommendation held that "CW1 sheds no light on the degree to which Inspirato was *aware* at the time of its accountants' deficiencies or the degree to which those deficiencies were resulting in misleading financial statements." *Id*. at 18. All these holdings – which Plaintiff disputes as incorrect even in the context of knowledge – are, respectfully, erroneous, because the Recommendation did not properly analyze these allegations through the lens of recklessness in a light most favorable to Plaintiff.

These allegations, moreover, adequately allege that Defendants acted at the very least recklessly with respect to the Company's financial statements, which Defendants concede were false and misleading. For instance, the Recommendation states that CW2's allegations may indicate "simply indicate that Inspirato was negligent, perhaps even grossly so, in how its financial affairs were accounted for" and that "[t]he fact that Inspirato did not prioritize internal controls or hire capable accountants similarly does not suggest anything more than negligence." Recommendation at 14. The Recommendation also stated that "Inspirato publicly acknowledged its defects in internal controls and difficulties in retaining qualified accountants as part of its disclosures in the 10-Q forms it filed in the first and second quarter of 2022." Recommendation at 14, 18, 20. However, "the fact that [the company] disclosed certain of its difficulties during the

9

class period does not necessarily negate an inference of scienter, for [the company's] statements may still have been intended to conceal the fact that its condition was substantially worse than its statements suggested." *Jones v. Corus Bankshares, Inc*., 701 F. Supp. 2d 1014, 1025 (N.D. Ill. 2010); *see also In re Sonus Networks, Inc. Sec. Litig*., No. Civ.A.04-10294-DPW, 2006 WL 1308165, at \*17 (D. Mass. May 10, 2006) ("Acknowledging one's wrongdoing does not excuse it.").

Moreover, Plaintiff alleges that CW1 stated that CEO Handler believed that he did not have to comply with GAAP, and that as a result, CEO Handler cut corners to get around GAAP compliance and was very comfortable defrauding people through the Company's financial statements. ¶¶34-35. According to CW1, CEO Handler demanded that the Company recognize all the revenue for certain transactions immediately although his demand did not comply with GAAP. *Id*. CW1 also stated that the Company's finance team manipulated numbers for CEO Handler. *Id*. Plaintiff alleges further that CW2 stated that CFO Neighbor attended meetings in which the participants included various financial teams and owners of apps. ¶41. CW2 stated that CFO Neighbor specifically attended meetings involving the Company's financial department and was extremely involved in meetings and issues that involved financial issues. *Id*.; *see also In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 710 (9th Cir. 2012) (allegations that defendants "were hands-on managers with respect to operational details and financial statements" support a strong inference of scienter). CW2 stressed that Inspirato's executives did not prioritize the Company's internal controls, nor did they prioritize having sufficient qualified personnel to handle the Company's accounting issues. ¶41. As a result, the Recommendation's analysis virtually ignored that these facts demonstrate recklessness, and thus failed to view the allegations in a light most favorable to Plaintiff.

**B.      The Recommendation Improperly Drew Inferences in Defendants' Favor**

Additionally, the Recommendation also went out of its way to improperly draw inferences in Defendants' favor.  For instance, the Recommendation discounted allegations demonstrating that CFO Neighbor participated in meetings in which he had access to information regarding the Company's financial issues and internal controls, suggesting that he was in such meetings because "he was, after all, the CFO."   Recommendation at 15.  The Recommendation also attempted to excuse the scienter reflected by the facts alleged in the Complaint by suggesting "[i]t is not uncommon for corporate executives to lack a full appreciation of complex fields such as accounting and to make demands that would seem impossible or illegal to experts in that field." *Id*. at 16-17 n.4.  Respectfully, allegations that an executive made demands that were "illegal" as the Recommendation characterized them – as well as the other allegations in the Complaint – most certainly demonstrate that Defendants acted at the very least recklessly, if not intentionally.

Other examples exist.  For instance, the Recommendation stated that "[a]fter acknowledging those defects, Inspirato's 10-Q form states that the company believes it 'made significant progress toward remediation of these control deficiencies described above,' such that it now believed that its public filings were accurate and in compliance with GAAP." *Id*. at 15. The Recommendation also stated that "CW2's allegations, which focus only on the existence of the accounting and internal control defects, do not comment on the remedial steps Inspirato claimed to be making, nor on the reasonableness of Inspirato's claimed belief that those remedial steps were effective." *Id*. at 15; *see also id*. at 20.

First, these allegations ***bolster*** the strong inference of scienter alleged; they do not detract from it. *See, e.g.*, *In re Sipex Corp. Sec. Litig.*, No. C 05-00392 WHA, 2005 WL 3096178, at *1 (N.D. Cal. Nov. 17, 2005) (holding that a company's remediation efforts added to the strong

inference of scienter alleged); *Norfolk County Retirement Sys. v. Ustian*, No. 07 C 7014, 2009 WL 2386156 (N.D. Ill. July 28, 2009) (rejecting defendants' argument that "senior management took remedial action and notified shareholders of accounting problems – acts that are wholly inconsistent with the purported scheme to cover up the failed restructuring behind fabricated financial statements").

Second, and more importantly, by accepting the "remedial steps Inspirato claimed to be making" and "the reasonableness of Inspirato's claimed belief that those remedial steps were effective, the Recommendation improperly drew inferences in Defendants' favor at the pleading stage. As the Tenth Circuit has declared, courts must view the alleged facts "in the light most favorable to the nonmoving party." *Pirraglia*, 339 F.3d at 1187; *Adams*, 340 F.3d at 1088. By accepting that Insiprato's purported remediation efforts were "reasonable" and "effective," the Recommendation failed to heed this principle.

Respectfully, the Recommendation made the same error in its analysis regarding recklessness. Specifically, the Recommendation held that the Company's SEC filings "stated that Inspirato was aware of past problems with accounting and internal controls and that it believed it had cured them, such that the 2022 financial statements were consistent with GAAP. *Nothing in the Amended Complaint offers any reason as to why that assertion should be disbelieved*." Recommendation at 15. The Recommendation, frankly, reverses the applicable standard. It is not Plaintiff's burden to allege facts to demonstrate that Defendants' assertions "should be disbelieved." Indeed, a court is not free to dismiss based on its "disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 555-56. Rather, courts must engage in a "comparative

12

assessment of plausible inferences, *while constantly assuming the plaintiff's allegations to be true*." *Tellabs*, 551 U.S. at 326-27. The Recommendation erred by failing to do so here.[7]

### C. The Recommendation Improperly Concluded That Motive is Required to Adequately Allege Scienter

The Recommendation also improperly concluded that motive is required to adequately allege scienter. Recommendation at 10. Specifically, the Recommendation stated that "plaintiff does not identify any imminent business transactions, private trading by Inspirato's executives, or any other unusual circumstances that would suggest a motive for Inspirato's executives to perpetrate a fraud." *Id*. The Supreme Court has repeatedly declared, however, that the "absence of a motive allegation" is "not dispositive." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011); *see also Tellabs*, 551 U.S. at 325 ("the absence of a motive allegation is not fatal"). As the Tenth Circuit has also declared, "[w]e will not, as defendants request, infer from the fact that they did not sell their [company] stock that they lacked motive to defraud investors." *Pirraglia*, 339 F.3d at 1191 n.12. Thus, respectfully, the Recommendation's conclusion that motive is required to adequately allege scienter was erroneous.[8]

---

[7] At various points, the Recommendation also improperly analyzed Plaintiff's scienter allegations in isolation rather than collectively as required by *Tellabs*. *See, e.g.*, Recommendation at 12 (rejecting allegations that CFO Neighbor's resignations contributed to a strong inference of scienter on the grounds that Plaintiff offered "only the fact of Mr. Neighbor's resignations, standing alone, apparently believing that the timing alone is probative").

[8] Plaintiff contends that because the Recommendation's holding regarding scienter was erroneous, the Recommendation's holding regarding control person liability was also erroneous. Doc. 48 at 21; *Mishkin v. Zynex Inc.*, No. 09-CV-00780-REB-KLM, 2011 WL 1158715, at *7 (D. Colo. Mar. 30, 2011).

## V.    ALTERNATIVELY, PLAINTIFF RESPECTFULLY REQUESTS LEAVE TO AMEND

Alternatively, Plaintiff also respectfully suggests that if the Court were to adopt the Recommendation, that Plaintiff should be granted leave to amend. As courts have universally declared, "[c]omplaints dismissed under Rule 9(b) are almost always dismissed with leave to amend." *Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017); *see also ATSI Comm'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 108 (2d Cir. 2007) ("District courts typically grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)."); *Eminence Capital, L.L.C. v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003) ("In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error."); *Ulbricht v. Ternium S.A*., No. 18CV6801PKCRLM, 2020 WL 5517313, at *12 (E.D.N.Y. Sept. 14, 2020) ("Notably, even where Plaintiffs have not specified how they would amend their pleading if granted leave to do so . . . complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend."). Here, leave to amend is warranted not only because courts almost always grant leave to amend in Exchange Act cases, but also because Plaintiff can allege additional facts from the CWs alleged in the Complaint (and potentially other witnesses) along with other facts that can bolster Plaintiff's scienter allegations.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully objects to the Recommendation.

14

Dated:  July 30, 2024

GLANCY PRONGAY & MURRAY LLP

By:  */s/ Ex Kano S. Sams II*
Robert V. Prongay
Ex Kano S. Sams II
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
esams@glancylaw.com
clinehan@glancylaw.com

*Attorneys for Lead Plaintiff Ilan Bouzaglo*

THE LAW OFFICES OF FRANK R. CRUZ
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiff*

## PROOF OF SERVICE

I hereby certify that on this 30th day of July, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

_s/ Ex Kano S. Sams II_
Ex Kano S. Sams II