**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00438-RMR-SBP

ILAN BOUZAGLO, individually and on
behalf of others similarly situated,

     Plaintiff,

v.

INSPIRATO INCORPORATED,
BRENT HANDLER, and
R. WEBSTER NEIGHBOR,

     Defendants.

_____

**MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**
_____

Defendants, by and through undersigned counsel, respectfully move to dismiss Plaintiff's Second Amended Complaint in its entirety pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, and Fed. R. Civ. P. 12(b)(6) and 9(b).[1]

## INTRODUCTION

Plaintiff's Second Amended Complaint ("SAC") does not remedy the pleading deficiencies identified by the Magistrate Judge in her Recommendation, Dkt. 48, and by this Court in adopting that Recommendation, to dismiss Plaintiff's Amended Class Action Complaint ("FAC"), Dkt. 52 (Order Adopting Recommendation). The Court found the FAC had insufficient allegations of scienter to support the claims asserted. In particular, the Court found:

- No allegations of "any imminent business transactions, private trading by Inspirato's executives, or any other unusual circumstances that would suggest a motive for Inspirato's executives to perpetrate a fraud," Dkt. 48 at 10;

- "[N]o direct evidence of any Inspirato official having actual (or even constructive) knowledge that the company's accounting for its leases violated ASC 842 and GAAP," *id.*;

- No allegations to indicate that Inspirato was anything more than potentially "negligent, perhaps even grossly negligent, in how its financial affairs were accounted for," *id.* at 14; and

- No allegations regarding the reasonableness of Inspirato's 10-Q disclosures of defects in internal controls and personnel with knowledge and experience in applying the new accounting standards, *id.* at 14-15, and insufficient allegations to raise an inference of scienter amounting to recklessness in light of the 10-Q disclosures, *id.* at 20.

---

[1]     On December 10, 2024, counsel for the parties conferred regarding this motion pursuant to Civ. Practice Standard 7.1B(b). Plaintiff opposed the relief sought herein.

1

Defendants will not reiterate the defects that the Court found sufficient to dismiss the FAC, and will instead focus on the new allegations by which Plaintiff has attempted to fill the gaps that proved fatal before. Those new allegations include allegations: (1) of generalized accounting and internal controls incompetence from five new confidential witnesses; (2) that Inspirato's CEO supposedly made "highly suspicious" stock sales in August 2022; (3) that company executives must or should have known of the ASC 842 accounting violations because the rule is so simple and complying with ASC 842 is a "core operation" of the company; (4) that scienter can be inferred from Inspirato's "substantial remedial actions" to address the ASC 842 issues; and (5) that the company waited five weeks to disclose that Inspirato's CFO, Mr. Neighbor, left Inspirato in July 2023. Most of these new allegations fail for the same reasons such generalized critiques of the company failed in the FAC. Dkt. 48 at 14. And none of the new allegations satisfies Plaintiff's burden of pleading that any Defendant was motivated to perpetrate a fraud or had contemporaneous knowledge of the relevant accounting errors at the time of the misstated financials, or even acted recklessly with respect to Inspirato's ASC 842 compliance.

The SAC does not remedy the pleading deficiencies previously recognized by the Court and fails to add new allegations that create a strong inference of scienter and therefore cannot state a claim based either on knowledge or recklessness. For the same reasons articulated in Defendants' Motion to Dismiss Amended Class Action Complaint, Dkt. 33, and the Magistrate Judge's Recommendation, Dkt. 48, as well as the reasons

set forth below, the Second Amended Complaint should be dismissed with prejudice in its entirety.

## FACTUAL BACKGROUND

### A. Inspirato's Business

Inspirato is a subscription-based travel company that provides subscribers with access to a portfolio of curated luxury vacation options. SAC ¶¶ 22-23. As part of its business, Inspirato is party to operating lease agreements for vacation homes, hotels, and corporate offices. SAC ¶ 38. Inspirato is a relatively new public company; it was founded in 2010 and remained a private company for over a decade. Movant Appx. at 7 – 4/29/22 Form S-1.[2] In June 2021, Inspirato LLC entered into a business combination agreement with a special purpose acquisition company to take Inspirato public. SAC ¶ 21. On February 11, 2022, the transaction closed, resulting in Inspirato becoming a publicly traded company. *Id.*

### B. ASC 842

ASC 842 is a lease accounting standard under GAAP. It requires lessees to recognize leases, with certain exceptions, on the balance sheet as right-of-use assets

---

[2]    Movant Appx. Exhibits 1-9 are eight Inspirato SEC filings and one FASB publication. Consideration of these Exhibits does not convert this motion into one for summary judgment. *See McNamara v. Pre-Paid Legal Servs., Inc.*, 189 F. App'x 702, 709 n.14 (10th Cir. 2006). Exhibits 3, 4, and 6-8 are incorporated by reference into the AC. ¶¶ 28-31, 49; *Wolfe v. Aspenbio Pharma, Inc.*, 2012 WL 4040344, at *2 (D. Colo. Sept. 13, 2012), *aff'd*, 587 F. App'x 493 (10th Cir. 2014) ("well-settled that in resolving a motion to dismiss, the court may consider documents referenced in the complaint"). Exhibits 1-9 are also judicially noticeable under Fed. R. Evid. 201(b). *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) (judicial notice of SEC filings); *SEC v. Goldstone,* 952 F. Supp. 2d 1060, 1221 (D.N.M. 2013) (judicial notice of FASB publications and FASB board minutes).

and lease liabilities. Prior to its implementation, leases were accounted for under ASC 840, which allowed operating leases to be kept off-balance-sheet. At a high level, a right-of-use asset represents the right to use a leased asset over a period of time. A lease liability represents the financial obligation for lease payments, discounted to present value. Public companies were required to adopt ASC 842 in early 2019. Private companies—like Inspirato at the time—were given until January 2022 due to concerns about the complexity of the standard and the COVID pandemic. Movant Appx. at 17018, 31-32 – Financial Accounting Statement Update.

### C. Inspirato's Q1 and Q2 Results

Three months after going public, Inspirato announced financial results for the first quarter of 2022. SAC ¶¶ 37-38. The Company explained that it adopted ASC 842 as of January 1, 2022. SAC ¶ 40. Inspirato also disclosed that it had identified material weaknesses in certain internal controls over financial reporting, explaining it "lacked a sufficient number of personnel with the appropriate level of knowledge and experience in the application of GAAP, including the application of new accounting standards" and that it had not designed and maintained "effective controls relevant to the preparation of our financial statements with respect to information technology general controls ('ITGCs')." *Id.* To address these issues, the Company implemented a remediation plan, including hiring additional accounting personnel and engaging third-party consultants to assist with the design and implementation of ITGCs. *Id.* It also warned investors that while remediation efforts would continue, the failure to implement and maintain effective internal controls could result in errors "that could result in a restatement of our financial statements

4

and could cause us to fail to meet our reporting obligations[.]" Movant Appx. at 58 – Form 10-Q for period ending 3/30/22.

Inspirato reported second quarter results in August 2022, SAC ¶¶ 39-40, including the same material weaknesses and that it continued to execute on its remediation plan. SAC ¶ 40. Investors were once again warned the ineffective controls could result in a restatement and/or the inability to meet reporting obligations. Movant Appx. at 70 – Form 10-Q for period ending 6/30/22.

D. The Restatements

On November 14, 2022, Inspirato announced that its Audit Committee, in consultation with management and its independent auditors, had determined the Q1 and Q2 2022 financial statements should no longer be relied upon. SAC ¶ 84 ("Restatements"). The primary reason: the Company had misapplied ASC 842 with respect to certain right-of-use assets and lease liabilities. *Id.* The anticipated result of the errors was an understatement of right-of-use assets and total lease liabilities of approximately 9% for both Q1 and Q2, resulting in an understatement of total assets and total liabilities by approximately 5% for each of those periods. *Id.* In addition, due to property-related and other expenses being under accrued in Q1 22, and over accrued in Q2 22, cost of revenue was understated by approximately 1% and by approximately 5% in the first and second quarters, respectively. *Id.* The errors did not have a material impact on the results of operations and had no impact on revenues or operating cash flows for Q1 and Q2. *Id.* Inspirato restated financial results for both quarters in December 2022.

SAC ¶ 90; Movant Appx. at 78-95 – Form 10Q/A. As is common, the Company had to delay the filing of its results for Q3 2022 in light of the Restatements. SAC ¶ 85.

## ARGUMENT

This case is governed by the stringent pleading standards of PSLRA, which requires Plaintiff to "specify each statement alleged to be misleading [and] the reasons why." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1109 (10th Cir. 2015). With respect to scienter, which is "a mental state embracing intent to deceive, manipulate, or defraud," Plaintiff must plead "with particularity facts giving rise to a strong inference" of fraudulent intent. *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333, 1343 (10th Cir. 2012). Plaintiff fails to plead scienter.

## I.      THE SECOND AMENDED COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

To plead scienter, Plaintiff "must allege facts sufficient to raise a strong inference that defendants' representations were intentionally false or at least recklessly made." *Gold Res.*, 776 F.3d at 1112-13. This is a "heavy" burden, under which an inference of scienter is "strong" "only if proof of the allegations would lead a reasonable factfinder to determine that an inference of fraudulent intent or recklessness is at least as compelling as an innocent inference." *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1216 (10th Cir. 2023). "Recklessness" is "'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it.'" *Gold Res.*, 776 F.3d at 1113 (affirming dismissal of restatement allegations). "Negligence, even gross negligence, is

6

not sufficient; something similar to 'conscious disregard' is required." *Id.* The absence of any motive counsels against finding scienter. *Level 3*, 667 F.3d at 1347 ("'[t]he absence of a motive allegation is not dispositive,'" but rather "'relevant'" and can "count[] against scienter"). Where, as here, a plaintiff does not allege a motive for committing securities fraud, the strength of allegations of scienter must be correspondingly greater. *Id.*

The Court already rejected as insufficient the majority of Plaintiff's attempts to plead scienter. First, the mere fact of restatements or accounting irregularities is not enough to state a securities fraud claim. Dkt. 48 at 9. The Court made clear that the alleged GAAP violations had to be tied to a "broader scheme or more detailed assertions of knowledge that would permit a reasonable inference of the Defendants' scienter." *Id.* Second, allegations of executive departures, without "particularized allegations connecting the departure[] to the alleged fraud," cannot support an inference of scienter. *Id.* at 11. Moreover, as found by the Magistrate Judge with respect to the FAC, Dkt. 48 at 21, since the primary securities fraud claim alleged in the SAC fails, so too must the "control person" liability claim against the individual defendants when there are insufficient allegations of scienter. *Meitav Dash*, 79 F.4th at 1230.

A. The New Confidential Witnesses Do Not Add Sufficient Allegations of Knowledge or Recklessness to Overcome The First Amended Complaint's Deficiencies

As the Magistrate Judge and this Court previously recognized, generalized allegations that Inspirato's CEO and CFO disregarded GAAP and knew of issues with accounting practices do not create the inference "that their failure to ensure that the leases were properly accounted for pursuant to ASC 842 was, at the very least, reckless."

7

Dkt. 48 at 12. And yet the new confidential witness allegations in the SAC are more of the same generalized statements insufficient to create the requisite inference of recklessness, let alone knowledge at the relevant time period.

**Confidential Witness #3**: CW3 allegedly states that the CEO and CFO had a propensity for "embellish[ing] information," company executives worked outside their areas of expertise, accounting was an afterthought, and that Inspirato's CEO, Mr. Handler, inflated numbers. SAC ¶¶ 58-62. But CW3 says nothing about Mr. Handler or Inspirato's CFO, Mr. Neighbor, actually knowing about the lease accounting problem at issue in the Restatements. Even if the SAC so alleged, nothing about CW3's role "on new product initiatives or interacting with different departments on new products" suggests CW3 is a competent witness to draw any conclusions about ASC 842 compliance or defendants' knowledge of Inspirato's compliance with ASC 842.

**Confidential Witness #4**: CW4 says only that Mr. Handler and Mr. Neighbor attended meetings in which financials were discussed, and that Mr. Handler once said, "God, I was not meant to run a company this big." SAC ¶ 63. Such a generalization, untethered to any particularized connection to the alleged fraud, contributes nothing to whether Mr. Handler acted at least recklessly regarding lease accounting under ASC 842.

**Confidential Witness #5**: Plaintiff's allegations as to CW5's insights mostly reiterate prior confidential witnesses' criticisms of the Inspirato accounting department and the set-up and implementation of the lease accounting system, while reiterating that lease accounting was not conducted pursuant to ASC 842. SAC ¶¶ 64-69. This generalized critique of Inspirato's accounting practices and internal controls creates no

8

inference of scienter. Nor does the allegation that CW5 informed Mr. Neighbor that "the Company lacked internal controls, review processes, and managers," *id.* ¶ 70, as CW5 does not purport to have informed Mr. Neighbor of the particular issues giving rise to Plaintiff's claim. Such generalized allegations of accounting deficiencies or that the CFO was informed of those general accounting and control issues are insufficient to create an inference of scienter.

The SAC also includes additional CW5 allegations apparently tailored to try to remedy the lack of allegations that Mr. Handler or Mr. Neighbor had actual knowledge of the ASC 842 accounting violations at issue in this case. Those too fall short of establishing knowledge "that Inspirato was misapplying GAAP and misrepresenting the revenue relating to the leases." Dkt. 48 at 13. The alleged misrepresentations giving rise to Plaintiff's securities fraud claim allegedly were contained within Inspirato's May and August 2022 Form 8-Ks and 10-Qs covering the period of January 1 through June 30, 2022. SAC ¶¶ 37-41. None of CW5's alleged statements address that relevant time period. Instead, the SAC alleges that CW5 had "conversations with CFO Neighbor regarding the misapplication of ASC 842, including at the time CW5 started at the Company [in 2020]," SAC ¶¶ 65, 71, and purports to recall Mr. Neighbor attending a meeting during which lease accounting issues were acknowledged "in the *fall* of 2022," *id.* ¶ 71. Any statements CW5 may have made to Mr. Neighbor about the company's application of ASC 842 back in 2020 or that Mr. Neighbor may have overheard in the Fall of 2022 cannot create an inference that Mr. Neighbor or any other defendant had knowledge that Inspirato was misapplying ASC 842 *in the first two quarters of 2022*.

9

Moreover, Mr. Neighbor learning of the accounting error in Fall 2022, shortly before Inspirato restated its financials, does not create an inference of scienter. If anything, this fact weighs against an inference of scienter.

**Confidential Witness #6**: Plaintiff's allegations as to CW6 are no more than that Mr. Handler and Mr. Neighbor "were micromanagers and very directive," with "a lot of strong opinions." SAC ¶ 72. These allegations self-evidently have no particularized connection to the alleged accounting issues and therefore contribute nothing towards creating an inference of scienter. *City of Brockton Ret. Sys. v. Shaw Grp., Inc.*, 540 F. Supp. 2d 464, 472-73 (S.D.N.Y. 2005) (allegations of knowledge based on executives being "hands on" is insufficient to allege scienter).

**Confidential Witness #7:** Plaintiff merely alleges CW7 "corroborated the accounts of CW2 and CW6," SAC ¶ 72, and thus also are insufficient.

B.     The Allegation That Mr. Handler Sold Stock At Suspicious Times Does Not Create An Inference of Scienter

As the Magistrate Judge recognized in recommending dismissal of Plaintiff's First Amended Complaint, Plaintiff did not initially identify "any imminent business transactions, private trading by Inspirato's executives, or any other unusual circumstances that would suggest a motive for Inspirato's executives to perpetrate a fraud." Dkt. 48 at 10. In the Second Amended Complaint, Plaintiff attempts to fill that gap by alleging that Inspirato's Mr. Handler sold Inspirato stock for an amount that was "substantially more than what [he] would have earned had investors known the truth about Inspirato's business operations," SAC ¶ 46, "during a time period where Defendants were making materially false statements to investors and/or failing to disclose material information that they had

a duty to disclose," *id.* ¶ 47. These allegations are insufficient to support any motive to perpetrate fraud.

"To determine whether trading activity is suspicious" such that insider stock trading may be indicative of scienter, "courts consider several factors, including the amount of profit from the sales, the portion of stockholdings sold, the change in volume of insider sales, and the number of insiders selling." *Smallen v. The W. Union Co.*, 950 F.3d 1297, 1310-11 (10th Cir. 2020) (holding insufficient to establish "whether sales are unusual or suspicious" allegations of insider stock sales absent "allegations concerning the price initially paid for the stock, what percentage of total shares these sales consisted of, or whether they were buying other types of shares at the same time."). "For individual defendants' stock sales to raise an inference of scienter, plaintiffs must provide a meaningful trading history for purposes of comparison to the stock sales within the class period." *In re Molycorp Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1009 (D. Colo. 2016), *as amended* (Jan. 28, 2016) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F. 3d 981, 1005 (9th Cir. 2009)). This must include "information on non-[c]lass [p]eriod sales, the amount of stock retained by the [d]efendants, or . . . whether the amount of stock owned by the [d]efendants actually increased during the [c]lass [p]eriod." *Id.* (quoting *Prissert v. EMCORE Corp.*, 894 F. Supp. 2d 1361, 1374 (D.N.M. 2012))

Plaintiff makes only generalized allegations that the timing and amount of Mr. Handler's stock sales were suspicious, but includes none of the particularized factual allegations from which this Court could find "that the trades were made at times and in quantities that are suspicious enough to support the necessary strong inference of

11

scienter." *Id.* at 1009 (quoting *In re Qwest Commc'ns Int'l*, 396 F. Supp. 2d 1178, 1195 (D. Colo. 2004)). Plaintiff does not allege if the "alleged trades were 'normal and routine'" for Handler," whether the profits obtained "were substantial enough in relation to the compensation level[]" for Handler" so as to produce a suspicion that [he] might have had an incentive to commit fraud," or that the sales were unusual in light of Mr. Handler's total stock holdings, all factors relevant to the scienter inquiry. *Id.*

Indeed, as the Court previously recognized, Inspirato disclosed in its 2022 10-Q filings[3] that it "was aware of past problems with accounting and internal controls and that it believed it had cured them, such that the 2022 financial statements were consistent with GAAP," and Plaintiff had alleged nothing to suggest Inspirato or the other defendants had "reason to know that the remedial steps it had taken were not effective," therefore failing "to raise an inference of scienter amounting to recklessness." Dkt. 48 at 20. The Second Amended Complaint includes no new allegations suggesting that Mr. Handler had reason to believe the company's remedial measures had been ineffective.

Plaintiff's generalized allegations of stock sales at suspicious times, without more, are insufficient to create an inference of "a motive for Inspirato's executives to perpetrate a fraud."

C.      The Core Operations Doctrine Does Not Create A Strong Inference of Scienter

In the absence of any allegations of actual knowledge of the underlying accounting issues at the relevant time period or any other basis for inferring scienter from the

---

[3]      The 10-Q filings were made on May 13, 2022 and August 10, 2022. *See* SAC¶¶ 38, 40, 90.

12

behavior of the defendants, Plaintiff asserts that "the core operations inference supports a strong inference of scienter." Dkt. 53 at 36. The "core operations" doctrine "refer[s] to instances where the nature of the [alleged fraud] was 'of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter.'" *In re Molycorp, Inc. Sec. Litig*, 157 F. Supp. 3d 987, 1011 (D. Colo. 2016) (quoting *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008)). In other words, Plaintiff asks the Court to **presume** that scienter exists based on the fact that the alleged fraud took place in the core of Inspirato's business. This doctrine would permit plaintiffs to "plead core-operations allegations without accompanying particularized allegations." *Id.* The Tenth Circuit has, however, "'decline[d] to accept a 'core operations' inference in order to plead scienter, absent particularized facts showing what executive actually knew.'" *In re Molson Coors Bev. Co. Sec. Litig*, 2020 WL 13499995, at \*8 (quoting *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 372 F. Supp. 1139, 1154 (D. Colo. 2019)); *see Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1246 (10th Cir. 2016), *as amended* (July 6, 2016) (rejecting application of "core operations" doctrine to infer scienter absent particularized allegations suggesting knowledge of underlying issue); *see Meitav Dash Provident Funds & Pension Ltd. v. Spirit Aerosystems Holdings, Inc.*, 79 F. 4th 1209, 1222 (10th Cir. 2023) (rejecting involvement in "core operations" to create a strong inference of scienter absent particularized allegations that create such an inference); *see also Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 320 (S.D.N.Y. 2021) (explaining that the core operations doctrine "cannot establish scienter on its own").

13

D.    Inspirato's "Substantial Remedial Actions" Do Not Support a Strong
      Inference of Scienter

Plaintiff alleges that the remedial measures taken to address the accounting

controls and procedures issues create a strong inference of scienter because they

"followed the Company's systemic and reckless disregard of Inspirato's internal financial

controls."  SAC ¶¶ 76-77. The post hoc adoption of remedial measures to address issues

once identified cannot reasonably suggest scienter. *Messner v. USA Techs., Inc.*, No.

CV-15-5427, 2016 WL 1466543, at *11 (E.D. Pa. Apr. 13, 2016) (rejecting argument that

defendant's recognition of error and implementation of remedial measures supported

inference of scienter, and finding remedial actions instead "support a non-culpable

inference").

E.    The Alleged "Simplicity" of the ASC 842 Principles Does Not Support a
      Strong Inference of Scienter

Plaintiff also alleges that a strong inference of scienter can be supported by the

simplicity of ASC 842. SAC ¶ 78. Courts, however, reject the sufficiency of allegations

that a violation of GAAP "smacks of fraudulent intent given the simplicity underlying the

relevant account rules" and hold that such allegations are "little more than [allegations of]

corporate mismanagement without proximity to the requisite 'extreme departure' from

ordinary standards of care.'" *Messner*, 2016 WL 1466543, at *8. Indeed "allegations of

GAAP violations or accounting irregularities, standing alone, are insufficient to state a

securities fraud claim." *Gold Res.*, 776 F.3d at 1113. Without more, the mere allegation

that the ASC 842 accounting rule allegedly violated is "simple" does not create a strong

inference of scienter.

14

F.    The Alleged Termination of Inspirato's CFO, Mr. Neighbor, Does Not
Create a Strong Inference of Scienter

The Second Amended Complaint alleges that Mr. Neighbor was "terminated" from Inspirato on July 15, 2023, which the company "failed to disclose to investors at the time the termination occurred," SAC ¶ 79, waiting 5 weeks to announce his departure, *id.* ¶¶ 80-81. Plaintiff offered no "particularized allegations connecting the departures to the alleged fraud," as the Magistrate Judge recognized is required for the departure of an executive to support an inference of scienter. Dkt. 48 at 11 (quoting *Meitav Dash Provident Funds & Pension, Ltd. v. Spirit Aerosystems Holdings, Inc.*, 79 F.4th 1209, 1228 (10th Cir. 2023)). Plaintiff asserts that the failure to timely disclose Neighbor's departure "is highly suspicious," SAC ¶ 82, but fails to satisfy his burden of pleading additional facts ". . . to illustrate a causal connection" between the alleged fraud and the departure. Dkt. 48 at 11 (quoting *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 446 & nn. 85, 86 (S.D.N.Y. 2005)).

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court dismiss the Second Amended Complaint in its entirety with prejudice.

15

Respectfully submitted this 11th day of December, 2024.

<div style="margin-left: 40%;">

s/ Michael Hofmann
Michael Hofmann
Bryan Cave Leighton Paisner LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Phone: (303) 866-0257
Michael.hofmann@bclplaw.com

Sarah L. Hartley
Bryan Cave Leighton Paisner LLP
1155 F Street NW
Washington, DC 20004
Phone:       (303) 866-0363
Sarah.hartley@bclplaw.com

*Attorney for Defendants Inspirato Incorporated,
Brent Handler and R. Webster Neighbor*

</div>

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of December, 2024, a true and correct copy of the foregoing **MOTION TO DISMISS SECOND CLASS ACTION COMPLAINT** was filed via CM/ECF which will send notice of the filing to counsel of record.

<u>*s/ Michael Hofmann*</u>
Michael Hofmann

17