**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

| | |
|---|---|
| ILAN BOUZAGLO, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:23-cv-00438-RMR-SBP |
| Plaintiff, | JURY TRIAL DEMANDED |
| vs. | <u>CLASS ACTION</u> |
| INSPIRATO INCORPORATED, BRENT HANDLER, AND R. WESTER NEIGHBOR, | |
| Defendants. | |

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................... 1

III.  STANDARD OF REVIEW................................................................................... 2

IV.   PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE
      ACT ................................................................................................................... 2

      A.    Plaintiff Adequately Alleges that Defendants Acted with Scienter.............. 3

            1.    The Accounts of the CWs Support a Strong Inference of
                  Scienter .................................................................................... 4

            2.    Defendants' Access to Information and Hands-on Management Style
                  Bolster the Strong Inference of Scienter Alleged ............................ 9

            3.    The Core Operations Inference Supports a Strong Inference of
                  Scienter ................................................................................... 10

            4.    CEO Handler's Suspiciously Timed Stock Sales Support a Strong
                  Inference of Scienter ................................................................. 11

            5.    Inspirato's Substantial Remedial Actions Support a Strong Inference
                  of Scienter ............................................................................... 13

            6.    The Simplicity of the Applicable Accounting Principles Supports a
                  Strong Inference of Scienter ....................................................... 13

            7.    CFO Neighbor's Secret Termination Adds to the Strong Inference of
                  Scienter Alleged ....................................................................... 14

      B.    Plaintiff Adequately Alleges Control Person Liability................................ 15

V.    CONCLUSION................................................................................................. 15

## TABLE OF AUTHORITIES

<u>CASES</u>

*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003)................................................................................ 4

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
827 F.3d 1229 (10th Cir. 2016)............................................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 2

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
2022 WL 4491093 (S.D. Cal. Sept. 27, 2022) ....................................................... 12

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008) ..................................................................... 9

*Curley v. Perry*,
246 F.3d 1278 (10th Cir. 2001)............................................................................... 15

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
594 F.3d 783 (11th Cir. 2010).................................................................................. 13

*El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*,
709 F. Supp. 3d 1296 (D. Colo. 2023) ................................................................ 8, 15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ................................................................................................ 3

*IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*,
706 F. Supp. 3d 1225 (D. Kan. 2023) ..................................................................... 10

*In re Am. Service Grp., Inc.*,
2009 WL 1348163 (M.D. Tenn. Mar. 31, 2009) ...................................................... 13

*In re Carter's, Inc. Sec. Litig.*,
2012 WL 3715241 (N.D. Ga. Aug. 28, 2012)........................................................... 14

*In re Countrywide Fin. Corp. Derivative Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ................................................................... 5

*In re Impax Laboratories, Inc. Sec. Litig.*,
  2007 WL 7022753 (N.D. Cal. July 18, 2007) ............................................................ 11

*In re Medicis Pharms. Corp. Sec. Litig.*,
  2010 WL 3154863 (D. Ariz. Aug. 9, 2010) ................................................................ 14

*In re SemGroup Energy Partners, L.P.*,
  729 F. Supp. 2d 1276 (N.D. Okla. 2010) .................................................................... 9

*In re Sipex Corp. Sec. Litig.*,
  2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) ........................................................... 13

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*,
  45 F.4th 1236 (10th Cir. 2022)............................................................................*passim*

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) .................................................................................................... 11

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*,
  79 F.4th 1209 (10th Cir. 2023)................................................................................... 10

*Messner v. USA Techs., Inc.*,
  No. CV 15-5427, 2016 WL 1466543 (E.D. Pa. Apr. 13, 2016).................................. 13

*Mishkin v. Zynex Inc.*,
  2011 WL 1158715 (D. Colo. Mar. 30, 2011) ......................................................... 4, 15

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
  58 F.4th 195 (5th Cir. 2023)................................................................................... 4, 10

*Pirraglia v. Novell, Inc.*,
  339 F.3d 1182 (10th Cir. 2003)............................................................................. 2, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................................... 2, 3, 8, 11

*Tung v. Dycom Indus., Inc.*,
  2020 WL 1865765 (S.D. Fla. Apr. 14, 2020)............................................................... 5

*United States Sec. & Exch. Comm'n v. Willis*,
  No. 22-CV-02744-GPG-SKC, 2023 WL 11956416 (D. Colo. Sept. 29, 2023) ............. 9

STATUTES

15 U.S.C. §78u-4(b)(2) ................................................................................................... 3

Lead Plaintiff Ilan Bouzaglo ("Plaintiff") hereby opposes Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint ("Motion").[1]

## I.      INTRODUCTION

In this securities fraud action brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, the Court previously held that Plaintiff had not adequately alleged that Defendants acted with scienter in making statements regarding Inspirato. ECF Nos. 48, 52.   Plaintiff's operative Complaint, however, cures the deficiencies previously found by the Court.   Indeed, contrary to Defendants' arguments, the SAC adequately alleges facts demonstrating that Defendants either knew that their misrepresentations were false or were, at a minimum, reckless regarding the falsity of such statements.  As a result, the Court should deny Defendants' Motion.

## II.     STATEMENT OF FACTS

Inspirato is a travel subscription company.  ¶2.  In February 2022, the Company began trading on the NASDAQ stock market.  *Id.*

ASC 842, or Accounting Standards Codification 842, is an accounting standard under Generally Accepted Accounting Principles ("GAAP"). ¶33.   The standard was issued by the Financial Accounting Standards Board ("FASB"), and it impacts lease accounting and reporting.  *Id.*  The standard requires that lessees recognize right-of-use

---

[1]      Defendants are Inspirato Incorporated, Chief Executive Officer ("CEO") Brent Handler ("Handler"), and Chief Financial Officer ("CFO") R. Webster Neighbor ("Neighbor") (collectively "Defendants").    Defendants Handler and Neighbor are collectively the "Individual Defendants."   Unless otherwise stated, all emphasis is added, all internal citations and quotations are omitted, and all paragraph references are to Plaintiff's Second Amended Complaint ("SAC" or "Complaint").

assets and lease liabilities on the balance sheet for most leases. *Id.* This requirement brings greater transparency related to the financial leverage and capital employed by companies. *Id.* ASC 842 can be simple to understand, interpret, and apply, particularly for accounting professionals. ¶34. Inspirato claims to have adopted ASC 842 as of January 1, 2022. ¶36.

Throughout the Class Period, Defendants attested to the accuracy of the Company's financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud. ¶¶37-40. On December 15, 2022, however, Inspirato was forced to restate its financial statements due to the misapplication of the applicable standard for lease accounting. ¶43. On this news, the Company's stock price plummeted, causing significant harm to investors. ¶86.

## III.    STANDARD OF REVIEW

A plaintiff's allegations need only be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety . . . ." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Additionally, courts must view the alleged facts "in the light most favorable to the nonmoving party." *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1187 (10th Cir. 2003).

## IV.    PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT

To state a claim under the Exchange Act, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between

the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014). Defendants challenge the Complaint only with respect to scienter.

### A.      Plaintiff Adequately Alleges that Defendants Acted with Scienter

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), which applies to Exchange Act claims, requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2); *Tellabs*, 551 U.S. at 314. "Scienter is a mental state embracing intent to deceive, manipulate, or defraud, *or* recklessness." *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1258-59 (10th Cir. 2022).

Importantly, "courts must consider the complaint in its entirety . . . . The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23 (italics in original). A strong inference of scienter arises if, "[w]hen the allegations are accepted as true and taken collectively," a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324-26. "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences" – the inference need only be equally plausible to any non-culpable inference. *Id.* at 324. "Where there are competing inferences that establish or negate the scienter requirement,

3

a tie favors the plaintiff on a motion to dismiss." *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 214 (5th Cir. 2023).

### 1. The Accounts of the CWs Support a Strong Inference of Scienter

The accounts of the Confidential Witnesses ("CWs") demonstrate that Defendants acted with scienter. ¶¶48-71. Plaintiffs can establish a strong inference of scienter under the Exchange Act based upon CW accounts. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1097-1107 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003). "[A]llegations based on the statements of the CWs are entitled to significant weight" where, as here, "the complaint describes the bases of the CWs' knowledge, the positions they held, their exposure to the relevant conduct, and the relevant time frame." *Mishkin v. Zynex Inc.*, 2011 WL 1158715, at *7 (D. Colo. Mar. 30, 2011).

For instance, CW5 (who worked at Inspirato from August 2020 to September 2023 in various capacities, including GL Accountant, Property Accountant, and Senior Property Accountant, and who specifically worked on issues related to the Company's implementation of Accounting Standards Codification ("ASC") 842) said that an Enterprise Resource Planning ("ERP") system was supposed to calculate the Company's lease accounting in accordance with ASC 842. ¶¶64, 67. However, CW5 stated that Defendants never properly set up the system. ¶67. CW5 said that once the ERP system was initiated, it malfunctioned and wreaked havoc on Inspirato's software system. *Id.* As a result, CW5 stated that the Company's lease accounting had to be performed manually and that the Company was failing to book deferred rent. ¶¶67-68.

CW5 also had multiple telephone calls with CFO Neighbor in which CW5 stated to Neighbor that the Company lacked internal controls, review processes, and managers.

4

¶70.  CW5 also informed CFO Neighbor during these telephone calls that the accounting personnel would perform a month-end close and book journal entries and no one ever looked at them.  *Id.*  According to CW5 – and as CW1 indicated as described below – the accounting personnel could have posted whatever numbers they wanted and no one would ever know.  ¶¶52, 70.  CW5 also stated that CW5 sent a very lengthy email in the beginning of 2021 expressing these concerns to CFO Neighbor.  ¶70.  CW5 stated that CFO Neighbor claimed he would investigate.  *Id.*

CW5 also had conversations with CFO Neighbor regarding the misapplication of ASC 842, including at the time CW5 started at the Company.  ¶71.  CW5 also recalls that in the fall of 2022, the Company held a large meeting with all managers, account executives, and everyone involved in lease accounting during which this issue was discussed.  *Id.*  CW5 stated that the participants acknowledged that the issue with lease accounting was a "big issue, and it's wrong."  CW5 stated that CFO Neighbor was a participant during this meeting.  *Id.*

The accounts of other CWs corroborate CW5's account, thereby enhancing the strong inference of scienter alleged. *See, e.g.*, *Tung v. Dycom Indus., Inc.*, 2020 WL 1865765, at *8 (S.D. Fla. Apr. 14, 2020) ("circuit courts have recognized information from multiple confidential sources can be meaningful when corroborated by one another"); *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1058 (C.D. Cal. 2008) ("[c]orroboration from multiple sources also supports an inference of scienter").  For instance, CW1 worked at Inspirato from October 2019 to October 2021, serving as both an Accounting Manager and as a Senior Accounting Manager.  ¶48.  CW1 stated that one of the biggest problems at the Company was that it built an internal technology

without the assistance of anyone in finance or accounting. *Id.* According to CW1, the Company's accounting was materially incorrect for many years. *Id.*

CW1 stated that CEO Handler believed that he did not have to comply with GAAP and that as a result, CEO Handler cut corners to circumvent GAAP compliance and was very comfortable defrauding people through the Company's financial statements. ¶¶49, 50. For example, CW1 stated that CEO Handler made the Company's accountants post entries into the Company's financial statements so they looked the way he wanted, not how GAAP required. *Id.* CW1 also stated that with respect to the finance reporting that CW1 observed, the Company's finance team manipulated numbers for CEO Handler. *Id.* CW1 also stated that the Company did not value accounting personnel. ¶51.

CW1 also stated that the Company invented its own currency call "travel perks." ¶52. According to CW1, however, those travel perks were not cash, but the Company was improperly recognizing them as revenue, which CW1 described as fraud. *Id.* CW1 stated that the root problem was that the Company was not willing to hire people with adequate accounting or finance knowledge. *Id.* CW1 also stated that the Company did not have appropriate safeguards for internal controls and processes. *Id.* CW1 also stated that in CW1's work on ASC 606, there were some provisions of ASC 606 that affected ASC 842. ¶53. According to CW1, the personnel at the Company handling the work on ASC 842 did not have the background and experience to properly perform the work. *Id.*

Additionally, CW2 served at Inspirato from September 2018 to January 2023. ¶54. CW2 served as an IT Manager from September 2018 to January 2022, and as an IT and Security Project Manager from November 2021 to January 2023. *Id.* CW2 discovered that during an initial assessment in approximately 2020, Inspirato had systems that the

Company did not properly identify as part of its record-keeping process. ¶55. CW2 stated that the Company failed to remedy these determinations, and that no internal controls were implemented to address the findings from the prior assessment. *Id.* CW2 also found that Inspirato had no checks and balances in place to verify manual entries that were made in the Company's financial reporting systems. *Id.*

In 2022, CW2 began working with CFO Neighbor. CW2 stated that CFO Neighbor attended meetings in which the participants included various financial teams and owners of apps. ¶¶56-57. CW2 stated that CFO Neighbor specifically attended meetings involving the Company's financial department and was extremely involved in meetings and issues that involved financial issues. *Id.* CW2 stressed that Inspirato's executives did not prioritize the Company's internal controls, nor did they prioritize having sufficient qualified personnel to handle the Company's accounting issues. *Id.*

CW3 worked at Inspirato between March 2016 to November 2022 in various positions, including: Manager, Brand Strategy and Content; Senior Manager, Brand Strategy; Director, Corporate Strategy; and Director, Strategy and Operations. ¶58. CW3's role was working very closely with CEO Handler on new product initiatives or interacting with different departments on new products. *Id.* CW3 worked closely with CEO Handler since 2019 and would spend at least an hour a day speaking with CEO Handler during the time that CW3 reported to CEO Handler. *Id.* CW3 also worked closely with CFO Neighbor. *Id.* CW3 stated that based upon CW3's experience with CEO Handler, CEO Handler would embellish information related to specific data. ¶59. CW3 stated further that most of the Company's executive team was working outside of their fields of background. ¶60. As a result, according to CW3, Inspirato's executive team did

7

not have extensive experience in the fields they were managing. *Id.* Additionally, CW3 said that the Company was chaotic and mismanaged. ¶61. CW3 stated that the Company's accounting was always an afterthought. *Id.* CW3 also said that CEO Handler was accustomed to skirting around the truth and inflating numbers. ¶62.

CW4 worked at Inspirato from October 2020 to January 2023 as a Senior Financial Analyst. ¶63. As a Senior Financial Analyst, CW4 interfaced with company executives and attended meetings with company executives weekly or several times a week – meetings that included the CEO and CFO. *Id.* During the meetings, participants would review the Company's financials, present forecasts, and discuss operational metrics, both back-end and forward-looking. *Id.* These accounts support a strong inference of scienter.

Defendants' arguments to the contrary fail. First, Defendants fail to appreciate that the accounts of CW1 and CW2 must be viewed collectively with all the facts alleged. *Tellabs*, 551 U.S. at 322-23; *Pluralsight*, 45 F.4th at 1259. For example, as noted above, the accounts of CW1 and CW5 corroborate each other, which is further indicative of scienter. ¶¶52, 70. Thus, Defendants' attempt to ignore the accounts of CW1 and CW2 in the context of the new facts alleged fails.

Second, Defendants' attempt to characterize the accounts of the new CWs as "generalized" and "insufficient" (Motion at 8-10) fails. "The touchstone of sufficient information and belief pleading via confidential witnesses is a wholistic review of the allegations' reliability." *El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, 709 F. Supp. 3d 1296, 1326–27 (D. Colo. 2023). Plaintiffs adequately allege the basis for the information attributed to the CWs, and the information provided by the CWs is particularized and acutely bears upon Defendants' scienter. Defendants,

8

moreover, cite virtually no authority for their assertions regarding the new CWs. Motion at 8-10. And the one case they cite – *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464 (S.D.N.Y. 2008) – is inapplicable because the court found that the facts alleged did not support the contention that Defendants were "hands-on," unlike the situation here as described more fully below. Additionally, Defendants' argument regarding conversations between CW5 and CFO Neighbor (Motion at 9) do not make sense, because it is eminently plausible that the conversations that occurred in 2020 related to issues that came to fruition later in 2022. Thus, the CW accounts support a strong inference of scienter.

### 2. Defendants' Access to Information and Hands-on Management Style Bolster the Strong Inference of Scienter Alleged

Defendants' access to information and the hands-on management style of CEO Handler and CFO Neighbor further support a strong inference of scienter. ¶¶56, 72. *See, e.g.*, *United States Sec. & Exch. Comm'n v. Willis*, No. 22-CV-02744-GPG-SKC, 2023 WL 11956416, at *11, *13 (D. Colo. Sept. 29, 2023) (holding that facts demonstrating that defendant was a "hands-on CEO" supported an inference of scienter); *In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1297 (N.D. Okla. 2010) ("One of the classic fact patterns giving rise to a strong inference of scienter is that defendants published statements when they knew facts or had access to information suggesting their public statements were materially inaccurate."). For instance, CW2 stated that CFO Neighbor attended meetings in which the participants included various financial teams and owners of apps. ¶¶56, 72. CW2 stated that CFO Neighbor specifically attended meetings involving the Company's financial department and was extremely involved in meetings and issues that involved financial issues. *Id.* Additionally, CW6 had regular meetings

9

with CEO Handler and CFO Neighbor.  ¶72.  According to CW6, Inspirato's CEO and CFO were micromanagers and very directive.  *Id.*  Additionally, CW7 also corroborated the accounts of CW2 and CW6, describing CEO Handler as "hands-on."  *Id.*  These facts are indicative of scienter.

### 3.    The Core Operations Inference Supports a Strong Inference of Scienter

The facts alleged also support a strong inference of scienter because they relate to the core operations of the Company.  Where facts are considered key to a company, "there can be no serious question that affirmatively misrepresenting" facts related to such issues can present "a danger of misleading investors."  *Pluralsight*, 45 F.4th at 1264; *see also Six Flags*, 58 F.4th at 219 (facts alleged that are "critical" to a company can support a strong inference of scienter); *IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*, 706 F. Supp. 3d 1225, 1261 (D. Kan. 2023) (same).  Although Defendants suggest that the Tenth Circuit has not adopted the core operations inference (Motion at 13), the Tenth Circuit has held that business operations are relevant but insufficient standing alone to raise an inference of scienter.  *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1222 (10th Cir. 2023); *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1245–46 (10th Cir. 2016).

Here, Inspirato leases most of its properties, and the Company's obligations to landlords under these lease agreements extend for periods that often significantly exceed the duration of customers' subscriptions, often by many years.  ¶74.  Additionally, the Company's cost of revenue includes costs directly related to delivering travel to its subscribers and guests, as well as depreciation and amortization related to leasehold improvements and equipment at residences.  *Id.*  These facts, along with the other facts

10

alleged, constitute particularized facts that demonstrate Defendants' scienter.  Inspirato, moreover, is a small company, which bolsters the inference of scienter created through the core operations inference.  Indeed, as of June 30, 2022, the Company had only 368 operations employees.  ¶75; *see In re Impax Laboratories, Inc. Sec. Litig.*, 2007 WL 7022753, at *10 (N.D. Cal. July 18, 2007) (holding that the small size of the company – 453 employees – added to a strong inference of scienter).  Thus, these facts add to the strong inference of scienter alleged.

### 4.    CEO Handler's Suspiciously Timed Stock Sales Support a Strong Inference of Scienter

CEO Handler's stock sales also add to the strong inference of scienter alleged. Initially, it is important to note that the "absence of a motive allegation" is "not dispositive." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011); *see also Tellabs*, 551 U.S. at 325 ("the absence of a motive allegation is not fatal"); *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1191 n.12 (10th Cir. 2003) ("We will not, as defendants request, infer from the fact that they did not sell their [company] stock that they lacked motive to defraud investors"). However, "[m]otive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference." *Pluralsight*, 45 F.4th at 1264.

Here, between August 10 and August 16, 2022, CEO Handler sold 89,345 shares of the Company's stock for proceeds of $317,847.57, while the price of the Company's stock was artificially inflated.  ¶46. These proceeds constituted substantially more than what CEO Handler would have earned had investors known the truth about Inspirato's business operations.  *Id.*  Specifically, on August 10, 2022, CEO Handler sold 15,779 shares of the Company's stock at $3.91 per share for proceeds of $61,695.89.  *Id.*  The same day, CEO Handler sold another 100 shares of the Company's stock at $4.90 per

11

share for proceeds of $490. *Id.* Additionally, on August 16, 2022, CEO Handler sold another 73,466 shares of the Company's stock at $3.48 per share for proceeds of $255,661.68. *Id.* The shares sold by CEO Handler, moreover were highly suspicious in both amount and timing. ¶47. For instance, on August 8, 2022 – two days before CEO Handler sold 15,879 shares of the Company's stock for proceeds of $62,195.89 – Defendants claimed, among other things, that Inspirato had achieved "record setting operational results" and that the Company's financial results were determined to be "in accordance with GAAP." *Id.* Also, on August 10, 2022 – the same day on which CEO Handler and CFO Neighbor attested to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud – CEO Handler sold 15,879 shares of the Company's stock for proceeds of $62,195.89. *Id.* And although Defendants argue that the Complaint lacks sufficient information regarding the context of the trades, courts have held that even where the complaint "does not allege the percentage of shares sold by the individual Defendants," the amount of stock sold can nevertheless contribute to "an inference that the individual Defendants' sales were unusual or suspicious and weigh in favor of an inference of scienter." *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2022 WL 4491093, at *13 (S.D. Cal. Sept. 27, 2022); *see also Pluralsight, Inc.*, 45 F.4th at 1265–67 ("To be sure, Defendants have pointed to some allegations potentially mitigating the suspicion surrounding their trades, but not enough to undermine the reasonable inference, at the motion-to-dismiss stage, that [defendant] was motivated to" make the misrepresentations alleged).

**5. Inspirato's Substantial Remedial Actions Support a Strong Inference of Scienter**

The Company's substantial remedial actions also support a strong inference of scienter. *See In re Am. Service Grp., Inc.*, 2009 WL 1348163, at *58 (M.D. Tenn. Mar. 31, 2009) (holding that "the adoption of sweeping internal Reforms" add to a strong inference of scienter). Here, on November 14, 2022, the Company announced that it was "developing a remediation plan for the material weaknesses" identified as a result of its re-evaluation of the effectiveness of the Company's disclosure controls and procedures as of March 31, 2022 and June 30, 2022. ¶76. Moreover, during the Company's earnings call on December 20, 2022, CFO Neighbor stated that Inspirato added staff and implemented measures "for the first time ever" ahead of an internal audit "tasked with delivering on the type of control environment that [one] would expect with a public company of our like kind of character." ¶77. These types of actions constitute "strong medicine" and "[s]uch house-cleaning and reforms do not follow innocent mistakes." *In re Sipex Corp. Sec. Litig.*, 2005 WL 3096178, at *1 (N.D. Cal. Nov. 17, 2005). "Rather, they customarily, even if not invariably, follow systemic and fraudulent abuse of internal financial controls." *Id.* Although Defendants cite *Messner v. USA Techs., Inc.*, No. CV 15-5427, 2016 WL 1466543 (E.D. Pa. Apr. 13, 2016) (Motion at 14), the decision there differs because plaintiff did not allege facts as alleged here that contribute to a strong inference of scienter. Thus, these facts add to the strong inference of scienter alleged.

**6. The Simplicity of the Applicable Accounting Principles Supports a Strong Inference of Scienter**

The simplicity of the relevant accounting standards also bolsters the strong inference of scienter alleged. *See Edward J. Goodman Life Income Trust v. Jabil Circuit,*

13

*Inc.*, 594 F.3d 783, 792 (11th Cir. 2010) (holding that in conducting its analysis of scienter, a district court may consider whether "the GAAP provision at issue [was or] was not a simple accounting policy"). Indeed, "allegations pertaining to the simplicity and obviousness of [accounting standards] give rise to at least some inference of intentional or deliberate misconduct." *In re Medicis Pharms. Corp. Sec. Litig.*, 2010 WL 3154863, at *5-*7 (D. Ariz. Aug. 9, 2010). Here, ASC 842 can be simple to understand, interpret, and apply, particularly for accounting professionals. ¶78. Moreover, because ASC 842 became effective for public companies before it became effective for private companies (like Inspirato at the time), many of the idiosyncrasies of the implementation of the standard became known to accounting professionals at private companies and were manageable. *Id.* And while Defendants protest that this fact, without more, support a strong inference of scienter (Motion at 14), Plaintiff never suggested otherwise. "[W]hen the alleged accounting errors are sufficiently basic and large, their existence, in combination with other factors, may support the requisite scienter inference." *In re Carter's, Inc. Sec. Litig.*, 2012 WL 3715241, at *3 (N.D. Ga. Aug. 28, 2012).

### 7. CFO Neighbor's Secret Termination Adds to the Strong Inference of Scienter Alleged

CFO Neighbor's secret termination from the Company – which Inspirato failed to disclose to investors at the time the termination occurred – also adds to the strong inference of scienter alleged. On March 15, 2023, the Company announced CFO Neighbor's termination as CFO and transition to Chief Strategy Officer. ¶79. On July 15, 2023, Inspirato terminated Neighbor from employment with the Company, but did not disclose this fact to investors for another five weeks. ¶80. On August 21, 2023, Inspirato announced that Neighbor and the Company had entered into a separation agreement

14

and that Neighbor had "separated from employment with the Company effective July 15, 2023." ¶81. This fact – coupled with the other facts alleged herein – is highly suspicious and adds to the strong inference of scienter alleged. ¶82. *See El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, 709 F. Supp. 3d 1296, 1347, 1349–50 (D. Colo. 2023) (holding that the departure of an executive added to the strong inference of scienter alleged because the departure "was not only effective immediately—it was retroactive when announced").

## B.    Plaintiff Adequately Alleges Control Person Liability

As demonstrated above, Plaintiff has adequately pled a primary violation under the Exchange Act. Additionally, Plaintiff has also alleged the Individual Defendants' control over the Company. ¶¶13-20; 113-117. Thus, Plaintiff has adequately alleged a control person claim under the Exchange Act. *Zynex*, 2011 WL 1158715, at *7.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion. Alternatively, if the Court grants any portion of the Motion, Plaintiff respectfully requests leave to amend. *See, e.g.*, *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("the district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim").

///

///

///

///

///

15

Dated:  January 23, 2025

GLANCY PRONGAY & MURRAY LLP

By:  */s/ Ex Kano S. Sams II*
Robert V. Prongay
Ex Kano S. Sams II
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
esams@glancylaw.com
clinehan@glancylaw.com

*Attorneys for Lead Plaintiff Ilan Bouzaglo*

THE LAW OFFICES OF FRANK R. CRUZ
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiff*

## **PROOF OF SERVICE**

I hereby certify that on this 23rd day of January, 2025, a true and correct copy of

the foregoing document was served by CM/ECF to the parties registered to the Court's

CM/ECF system.

*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II

17