# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00438-RMR-SBP

ILAN BOUZAGLO, individually and on
behalf of others similarly situated,

      Plaintiff,

v.

INSPIRATO INCORPORATED,
BRENT HANDLER, and
R. WEBSTER NEIGHBOR,

      Defendants.

_____

## REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
_____

Defendants respectfully submit this *Reply in Support of Motion to Dismiss Plaintiff's Second Amended Complaint* (the "SAC") pursuant to the PSLRA and Fed. R. Civ. P. 12(b)(6) and 9(b).

I.    **Plaintiff Continues to Rely On The Allegations of The First Amended Complaint, Which Already Have Been Determined Insufficient, To Support An Inference of Scienter**

Though the Court previously determined that the allegations from Confidential Witnesses ("CWs") 1 and 2 did not support an inference of scienter, Plaintiff continues to rely heavily on those allegations to oppose Inspirato's Motion to Dismiss.  But the Court previously recognized that CW1's and CW2's allegations "do not speak directly to either [the CEO's or CFO's] knowledge (or anyone else's) that Inspirato was misapplying GAAP and misrepresenting the revenue relating to the leases."  Dkt. 48 at 13.

In particular, the Magistrate Judge explained that "CW2's allegations offer little insight as to the scienter of Inspirato or its executives when it comes to the erroneous accounting of the leases and other financial misstatements at issue here." *Id.* at 14.  And, as to CW1, the Magistrate Judge observed that, even giving "CW1's assertions the maximum possible credit, the court nevertheless finds that they fail to support a strong inference of scienter as it relates to Inspirato's misstatements in its first and second quarter financials in 2022." *Id.* at 18.  The "predominant thrust" of CW 1 and 2's allegations, and of the First Amended Complaint, was that "accounting errors (likely resulting from a neglected, possibly adversarial accounting department), not purposeful fraud, was the reason for the misstated financials in 2022." *Id.* at 19.

2

The same allegations from CW1 and CW2 in the SAC do not now support scienter, even in combination with allegations from the lately-added confidential witnesses. Because CW5 does not make statements specifically addressing Defendants' knowledge or reckless disregard of ASC 842 compliance issues at the relevant time, CW1 cannot "corroborate" such statements, *see* Dkt. 71 at 9, with CW1's already-rejected generalized allegations.  *See* Dkt. 66 (Motion) at 10.

## II.    The Added Confidential Witness Allegations Do Not Support An Inference of Scienter

Plaintiff argues that the new CWs "demonstrate that Defendants acted with scienter."  Dkt. 71 at 8.  They do not.

**CW5:**  CW5 regurgitates the generalized allegations of poor internal controls, which should be rejected for the reasons already given by the Court.  Further, CW5's alleged statements to Mr. Neighbor that the "Company lacked internal controls, review processes, and managers," or even that accounting personnel did not adequately review month-end close and book journal entries, Dkt. 71 at 8-9, do not relate specifically to ASC 842.  CW5 allegedly discussed with Mr. Neighbor "the misapplication of ASC 842" when he joined the company (allegedly in 2020), and then stated that in the Fall of 2022 Mr. Neighbor participated in a meeting in which the lease accounting issues were discussed. SAC ¶ 71.  Plaintiff argues that the timing of CW5's supposed remarks to Defendants (two years before the supposed misrepresentations) should be ignored because "it is imminently plausible that the conversations that occurred in 2020 related to issues that came to fruition later in 2022."  Dkt. 71 at 13.  However, as Plaintiff admits, Inspirato did not adopt ASC 842 until January 1, 2022, SAC ¶ 36, and thus discussions regarding how

3

others may have been misapplying ASC 842 in 2020 – before Inspirato adopted ASC 842 – are irrelevant to whether Mr. Neighbor **knew or recklessly disregarded** in early 2022 that the statements made in financial statements were inaccurate based on an alleged misapplication of ASC 842. The SAC does not even specifically allege that CW5 informed Mr. Neighbor that the Company was somehow misapplying ASC 842 in 2020, years *before* the Company adopted ASC 842, only that the broad topic of "the misapplication of ASC 842" was discussed. SAC ¶ 71. And Plaintiff does not address the Fall 2022 statements, and thus appears to concede that Mr. Neighbor's knowledge many months *after* the alleged misstatements cannot create an inference of scienter at the time the statements were made – especially since the SAC itself admits that Inspirato corrected the accounting treatment in the Fall of 2022. SAC ¶¶ 3, 71.

**CW3 and CW4:** Plaintiff's Opposition shows that CW3 and CW4 allege no more than generalized statements that Defendants did not account well or properly, and participated in meetings regarding Company financials. Dkt. 71 at 12. As detailed above, that is not enough to create an inference of scienter.

**CW6 and CW7:** CW6 and CW7 likewise provide no allegations to support an inference of scienter as they state only that Mr. Handler and Mr. Neighbor were "micromanagers," "very directive," and/or "hands-on." Dkt. 71 at 14.

III.    **Defendants' Alleged Access to Information and "Hands-On" Management Style Do Not Support A Strong Inference of Scienter Without More**

Plaintiff argues that "Defendants' Access to Information and Hands-On Management Style *Bolster* the Strong Inference of Scienter Alleged," Dkt. 71 at 9 (emphasis added), seemingly conceding that such allegations, on their own, would not create a strong inference of scienter.  Indeed, they do not.  The cases cited by Plaintiff confirm that "hands-on management" and "access to information" do not alone create an inference of scienter.  For example, in *United States Sec. & Exch. Comm'n v. Willis*, No. 22-cv-02744-GPG-SKC, 2023 WL 11956416 (D. Colo. Sept. 29, 2023), the complaint at issue alleged that the CEO was "hands-on," but found that allegation supported an inference of scienter only in the context of the CEO also being "keyed in on [the company's] major business developments," including the particular business issues at stake in the alleged misrepresentations.  *Id.* at *11.  And in *In re Sem Group Energy Partners, L.P.*, 729 F. Supp. 2d 1276 (N.D. Okla. 2010), the court recognized that scienter can be inferred when "defendants published statements when they *knew facts* or had access to information suggesting their public statements were materially inaccurate."  *Id.* at 1297 (emphasis added).  No CW alleges that either Mr. Neighbor or Mr. Handler knew, or had access to information suggesting, that the 2022 statements regarding ASC 842 compliance were inaccurate.

IV.    **The "Core Operations Doctrine" Does Not Support A Strong Inference of Scienter In the Absence of Particularized Allegations**

As detailed in the Motion at 12-13, and conceded by Plaintiff in the Opposition, the Tenth Circuit has not adopted the core operations doctrine in a manner that permits mere

5

access to information or hands-on management alone to support an inference of scienter.

Dkt. 71 at 14.  Additional, particularized facts are required.  Plaintiff points to *Indiana Public Retirement System v. Pluralsight, Inc.*, 45 F.4th 1236 (10th Cir. 2022), to support the notion that when the allegedly misrepresented "facts are considered key to a company," a strong inference of scienter can be found, but that case looked to several other particularized allegations of defendant's knowledge regarding the key facts to support an inference of scienter.  Moreover, it was not the defendant's involvement in core operations that led to a finding of a strong inference of scienter, but rather the defendant's statements to investors that the allegedly misrepresented fact was at the "core" of the company's business model.  *Id.* at 1264.  Here, Plaintiff can point to little more than that Defendants were executives who were "hands-on" and participated in financial meetings on a regular basis, and that leases were a "core" part of Inspirato's business.  Such allegations do not, without more, support a strong inference of scienter about supposedly inaccurate accounting treatment of those leases under a newly-adopted accounting standard.  And, as detailed above and in the Motion, the SAC, like the dismissed First Amended Complaint, includes no allegations suggesting that Defendants knew about the alleged ASC 842 compliance issues, or were reckless regarding them.

V.    **The Allegations Regarding Mr. Handler's Stock Sales Do Not Create An Inference of Scienter**

After the Court pointed out the Plaintiff had failed to allege any private trading by Inspirato's executives that would suggest a fraud motive, Dkt. 48 at 10, the SAC alleged that Mr. Handler sold Inspirato stock for substantially more than he would have earned

6

had investors "known the truth about Inspirato's business operations." SAC ¶ 46. The SAC identified share amounts and dollar value, claiming the sales were "highly suspicious in both amount (based on the sheer dollar value of shares sold) and timing)…" SAC ¶ 47. Plaintiff argues the SAC included sufficient detail. Dkt. 71 at 16. It did not.

Notably, Plaintiff relies on an unpublished case from the Southern District of California for the proposition that more detailed allegations are not required, ignoring *In re Molycorp Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1009 (D. Colo. 2016), *as amended* (Jan. 28, 2016), in which this Court explained that for stock sales to raise an inference of scienter, plaintiffs must allege "a meaningful trading history for purposes of comparison to the stock sales within the class period," including "information on non[c]lass [p]eriod sales, the amount of stock retained by the [d]efendants, or . . . whether the amount of stock owned by the [d]efendants actually increased during the [c]lass period." *Id.* (quoting *Prissert v. EMCORE Corp.*, 894 F. Supp. 2d 1361, 1374 (D.N.M. 2012)). In *Molycorp*, the court found the allegations regarding trades sufficient to raise an inference of scienter "because the Court [was] able to determine whether the trades were 'normal and routine'" and could "discern that the insider-selling Defendants' Class Period actions were out of line with their trading practices." *Id.* at 1009-1010. There, plaintiffs alleged facts sufficient to determine the profits made from the stock sale, the relation to defendants' total stock holdings, and how the allegedly suspicious trades compared to defendants' trading history. *Id.* at 1010. Plaintiff's allegations here fall far short.

Furthermore, the cases Plaintiff cites do not suggest these allegations would be sufficient. In *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms, Inc.*, No. 3:21-CV-

7

00762-WQH-NLS, 2022 WL 4491093, at *13 (S.D. Cal. Sept. 27, 2022), the court stated that factors "that **must be considered** to determine whether stock sales raise a strong inference of deliberate recklessness are: '(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history.'" *Id.* (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1990)) (emphasis added).  The court there excused the failure to allege the percentage of shares sold because they alleged "substantial" stock sales (i.e., nearly 930,000 shares sold for more than $43.7 million).  *Id.*  By contrast, Plaintiff alleges a total of less than 180,000 Inspirato shares sold for less than $660,000.  SAC ¶¶ 46-47.  And in *Pluralsight,* 45 F.4th 1236, 1267, the Tenth Circuit found an inference of scienter based on particularized allegations of the inflated price for the defendants' shares, the percentage of holdings, and trading history during and after the class period.  *Id.*  Plaintiff's allegations fall far short of those in *Pluralsight*, and cannot support a strong inference of scienter.

VI.    **Inspirato's Remedial Actions Do Not Support A Strong Inference of Scienter**

Adopting remedial measures cannot strongly suggest scienter.  *Messner v. USA Techs., Inc.*, No. CV-15-5427, 2016 WL 1466543, at *11 (E.D. Pa. Apr. 13, 2016) (rejecting argument that defendant's recognition of error and implementation of remedial measures supported inference of scienter).  In *Messner*, the Court found allegations of remedial measures irrelevant to any inference of scienter or recklessness, and, indeed, "to cut against Plaintiff as they support a non-culpable inference by showing Defendants'

8

recognition of the error and attempt to improve its business to reduce the likelihood of another reporting error." *Id.*

The alleged remedial measures undertaken by Inspirato were to re-evaluate the effectiveness of controls and procedures, and to add staff. Dkt. 71 at 17 (citing SAC ¶¶ 76-77). "On its own, a company's decision to enhance financial controls does not show that those controls were previously deficient" so as to evidence scienter. *Johnson v. Costco Wholesale Corp.*, No. C18-1611 TSZ, 2019 WL 6327580, at *20 (W.D. Wash. Nov. 26, 2019). And, remedial measures, on their own, likewise do not support scienter. In *Johnson*, the court noted that *In re Sipex Corp. Sec. Litig.*, No. C 05-00392 WHA, 2005 WL 3096178, at *1 (N.D. Cal. Nov. 17, 2005)—the key case cited by Plaintiff—relied on "multiple other strong indicia of scienter" to support the sufficiency of scienter allegations. *Id.* (noting that *Sipex* looked at remedial measures, restatement of financials, "sham" sales, and forced resignation of CEO for sufficiency of scienter allegations).

## VII.    **The Alleged "Simplicity" of the ASC 842 Principles Does Not Support a Strong Inference of Scienter**

Plaintiff argues that the simplicity of the GAAP provisions gives "rise to at least some inference of intentional or deliberate misconduct." Dkt. 71 at 18 (quoting *In re Medicis Pharms. Corp. Sec. Litig*, 2010 WL 3154863, at *5-7 (D. Ariz. Aug. 9, 2010)). Plaintiff admits, however, that alleged simplicity cannot, without more, support a strong inference of scienter. *Id.* As detailed in the Motion and above, no other allegations give rise to a strong inference of scienter, and so the alleged simplicity of ASC 842 stands alone and cannot meet Plaintiff's pleading burden. Here, as in the case relied upon by Plaintiff – *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 792 (11th

Cir. 2010) – "evaluating the complexity of [the accounting rule] is not necessary…because [Plaintiff has] failed to allege any facts indicating that any individual [defendant] knew that the accounting standard was being violated."

VIII. **The Alleged Termination of Mr. Neighbor Does Not Support A Strong Inference of Scienter**

Finally, Plaintiff's allegations regarding the alleged "termination" of Mr. Neighbor do not support a strong inference of scienter.  The SAC's allegations directly contradict the Form 8-Ks incorporated by reference.  First, Plaintiff alleges that Inspirato announced on March 15, 2023, that Mr. Webster was terminated as CFO.  SAC ¶ 79.  The Form 8-K, however, describes Mr. Neighbor's transition to the role of Chief Strategy Officer while continuing to serve as CFO until a permanent replacement is appointed.  *See* Movant Appx. 135 (3/15/23 Form 8-K) at 136.  No termination is mentioned.  Second, as to Mr. Neighbor's eventual departure, the August 21, 2023, Form 8-K announced that *on that very day* Mr. Neighbor was separated pursuant to a separation agreement with a July 15, 2023 effective date.  *See* Movant Appx. 172 (8/21/23 Form *-K) at 175, 182.  That same-day announcement does not suggest scienter as to alleged misrepresentations in Inspirato's financials well over a year before.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court dismiss the Second Amended Complaint with prejudice.

10

Respectfully submitted this 6th day of February, 2025.

s/ Michael Hofmann

Michael Hofmann
Bryan Cave Leighton Paisner LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Phone: (303) 866-0257
Michael.hofmann@bclplaw.com

Sarah L. Hartley
Bryan Cave Leighton Paisner LLP
1155 F Street NW
Washington, DC 20004
Phone:        (303) 866-0363
Sarah.hartley@bclplaw.com

*Attorney for Defendants Inspirato Incorporated,
Brent Handler and R. Webster Neighbor*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of February, 2025, a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS SECOND CLASS ACTION COMPLAINT** was filed via CM/ECF which will send notice of the filing to counsel of record.

_s/ Michael Hofmann_
Michael Hofmann

12