IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:23-cv-00438-RMR-SBP

ILAN BOUZAGLO,
KEITH KOCH, *Individually and on behalf of all others similarly situated*,

    Plaintiff,

v.

INSPIRATO INCORPORATED,
BRENT HANDLER, and
R. WEBSTER NEIGHBOR,

    Defendants.

---

**ORDER ADOPTING RECOMMENDATION AND GRANTING
DEFENDANTS' MOTION TO DISMISS**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Susan Prose entered on August 11, 2025, ECF No. 73 (the "Recommendation"), addressing Defendants' Motion to Dismiss Second Amended Class Action Complaint, ECF No. 66. Magistrate Judge Prose recommends that Defendants' Motion be granted and that the Second Amended Class Action Complaint be dismissed with prejudice. Plaintiff filed an Objection to the Recommendation, ECF No. 74, and Defendants filed a Response to Plaintiff's Objection to the Recommendation, ECF No. 75. For the following reasons, the Court **OVERRULES** Plaintiff's Objection, **AFFIRMS AND ADOPTS** the Recommendation, and **DISMISSES** Plaintiff's Second Amended Class Action Complaint, ECF No. 64, **WITH PREJUDICE**.

# I. BACKGROUND

Magistrate Judge Prose included a detailed background on the facts of this case in her Recommendation, ECF No. 73 at 1−8. The Court incorporates that Background Section herein by reference. This Court previously adopted a Recommendation from Magistrate Judge Prose, ECF No. 48, dismissing Plaintiff's First Amended Complaint without prejudice, ECF No. 52. Just as with Defendants' Motion to Dismiss the First Amended Complaint, ECF No. 33, Defendants argue that the Second Amended Class Action Complaint ("SAC") fails to plead a strong inference of scienter, ECF No. 66. Unlike the first Recommendation, Plaintiff filed an Objection to Magistrate Judge Prose's second Recommendation that complies with Civil Practice Standard 72.3(c).[1] *See* ECF No. 74. Given Plaintiff's Objection, the Court must determine *de novo* any part of the Magistrate Judge's disposition that has been properly objected to under Federal Rule of Civil Procedure 72(b)(3).

# II. LEGAL STANDARD

Federal Rule of Civil Procedure 72, Magistrate Judges: Pretrial Order, states, in relevant part:

> **(b) Dispositive Motions and Prisoner Petitions.**
>
> .   .   .
>
> **(3) *Resolving Objections.*** The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended

---

[1] Plaintiff filed an Objection to the first Recommendation dated July 16, 2024, ECF No. 49, but it was stricken for failure to comply with Civ. Practice Standard 72.3(c) limiting Objection to Magistrate Judge Recommendations to ten (10) pages, ECF No. 51. *See also* ECF No. 52 at 1.

2

disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1)(C).

### III. ANALYSIS

After a thorough *de novo* review of the relevant pleadings and applicable case law, this Court agrees with Magistrate Judge Prose's findings and recommendation to dismiss Plaintiff's SAC with prejudice. In sum, this Court agrees with Magistrate Judge Prose's and Defendants' interpretation of the heightened pleading standard required by the Private Securities Litigation Reform Act ("PSLRA"), *see* ECF Nos. 73 at 10 & 75 at 3, in concluding that Plaintiff has failed to state with particularity facts giving a strong inference that Defendants acted with the required scienter, and rejects Plaintiff's apparent attempts to downplay this heightened standard as one of mere plausibility under *Twombly/Iqbal*, *see* ECF No. 74 at 6. Thus, Plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6).

#### A. PSLRA HEIGHTENED PLEADING STANDARD

The United States Supreme Court explained the heightened pleading standard as intentionally provided by Congress in the PSLRA:

> As a check against abusive litigation in private securities fraud actions, the Private Securities Litigation Reform Act of 1995 (PSLRA) includes exacting pleading requirements. The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention "to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, and n. 12, 96 S. Ct. 1375, 47 L.Ed.2d 668. As set out in § 21D(b)(2), plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Congress left the key term "strong inference" undefined.

3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 308 (2007).

In *Tellabs*, the Supreme Court said its task was "to prescribe a workable construction of the 'strong inference' standard, a reading geared to the PSLRA's twin goals: to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Id.* at 309. The Court held, "To qualify as 'strong' within the intendment of § 21D(b)(2), an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* To elaborate, the Supreme Court stated:

> The inquiry is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. Third, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences. . . . [I]n § 21D(b)(2), Congress did not merely require plaintiffs to allege facts from which an inference of scienter rationally could be drawn. Instead, Congress required plaintiffs to plead with particularity facts that give rise to a "strong"—*i.e.*, a powerful or cogent—inference. To determine whether the plaintiff has alleged facts giving rise to the requisite "strong inference," a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, but it must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged.

*Id.* at 310.

"In sum, the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 326. "'Motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference,' but these

4

factors are 'typically insufficient in themselves' to give rise to a strong inference of scienter." *Smallen v. The W. Union Co.*, 950 F.3d 1297, 1310 (10th Cir. 2020) (affirming dismissal of shareholder allegations insufficient to give rise to strong inference of scienter) (quoting *Tellabs*, 551 U.S. at 325; *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1191 (10th Cir. 2003)).

> **B. COLLECTIVE FACTS ALLEGED IN THE SAC DO NOT GIVE RISE TO A STRONG INFERENCE OF SCIENTER**

Plaintiff argues that the Recommendation erred by drawing inferences in Defendants' favor and failing to analyze Plaintiff's allegations collectively. *See* ECF No. 74 at 8–14. "'The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible of competing inferences' – the inference need only be equally plausible to any non-culpable inference." *Id.* at 7 (quoting *Tellabs*, 551 U.S. at 324). Defendants counter that Magistrate Judge Prose applied the correct pleading standard, weighed appropriate inferences on both sides, and considered the new allegations in the SAC from the Confidential Witnesses ("CW") collectively with the rest of Plaintiff's allegations. *See* ECF No. 75 at 3–9.

Upon its own *de novo* review, the Court finds that the correct pleading standard as applied to the facts alleged in the SAC warrants dismissal. Not only did Magistrate Judge Prose appropriately consider the new CW statements, but she also considered them in the context of the collective allegations in the SAC.

Plaintiff alleges that the Recommendation's "most egregious errors involved its evaluation of CW5's account," but the Court disagrees. CW5, a staff accountant, allegedly told Inspirato's Chief Financial Officer, Defendant R. Webster Neighbor, that the company

5

had accounting issues, including issues related to the "misapplication" of ASC 842 in 2020 and early 2021, a year before Inspirato went public. *See* ECF No. 74 at 8−9. Also, in the fall of 2022, Inspirato allegedly "held a large meeting that included CFO Neighbor in which the participants discussed Inspirato's misapplication of ASC 842 and conceded it was a 'big issue, and it's wrong." *Id.* at 9. Accepting these allegations as true while also considering non-culpable explanations, as the Court is bound to do, the Court agrees with Magistrate Judge Prose's thorough consideration and findings related to CW5, *see* ECF No. 73 at 15−18. Inspirato acknowledged its accounting shortcomings in its May 2022 Form 10-Q, disclosing that Inspirato had discovered "material weaknesses in internal control over financial reporting" as of March 31, 2022. *See* ECF No. 73 at 2 & n.1. Those weaknesses were attributed to the fact that Inspirato "lacked a sufficient number of personnel with the appropriate level of knowledge and experience in the application of GAAP, including the application of new accounting standards," among other defects. *Id.*

Further, in November 2022, Inspirato filed its Forms 8-K and 10-Q for the third quarter of 2022. *See* ECF No. 73 at 2. In those forms, Inspirato reported that its Audit Committee had determined that the financial statements it had issued for the first and second quarters of 2022—those statements in the May and August 2022 Forms 8-K and 10-Q—"should no longer be relied upon." *Id.* at 2−3. Inspirato explained that it had determined that it had incorrectly applied ASC 842 to its accounting for leases during those periods and that, as a result, it had understated its liabilities by as much as 9% in its earlier filings. *Id.* at 3. Inspirato explained it "intends to restate" the financial statements

6

for those time periods in amended filings and recommended that investors not rely on the existing Form 8-K and 10-Q for those periods. *Id.*

The Court agrees with Magistrate Judge Prose that while CW 5's allegations are likely the least attenuated from Plaintiff's claims, even when considered collectively with the other CW allegations and the SAC as a whole,[2] they nonetheless fail to lead this Court to deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged. *See Tellabs*, 551 U.S. at 310. *See also id.* at 314 ("An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct."). This is not a case of "improperly drawing inferences in Defendants' favor[,]" as Plaintiff alleges. ECF No. 74 at 8. Magistrate Judge Prose was, in fact, required to consider opposing inferences. *See Tellabs*, 551 U.S. at 310, 326, and the Court agrees that at most, the CWs' allegations simply indicate that Inspirato was negligent in how it generally handled its financial affairs. Inspirato was candid about its accounting shortcomings and, as Plaintiff alleges, took "substantial remedial actions" after the issues raised in Plaintiff's SAC occurred, including

---

[2] The Court will not walk through each of the new CW allegations in this Order. After its own independent review of the facts, the Court agrees with the Recommendation's findings as to CWs 1−7, and agrees that they, collectively with all alleged facts in the SAC, would not lead a reasonable person to deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged. Two allegations not discussed at length in this Order, but for which the Court finds they support evidence of negligence, at best, not the necessary scienter for fraud, include: (1) Inspirato's Chief Executive Officer, Defendant Brent Handler, could have done more to verify manual entries in Inspirato's financial reporting systems, that he allegedly would sometimes "inflate numbers," and that he felt he was in over his head with Inspirato's growth, *see* ECF No. 74 at 8; (2) Inspirato terminated its Chief Financial Officer, Defendant R. Webster Neighbor, on or around March 15, 2023, and waited five weeks to announce his departure, *see id.* at 13. The Court agrees with Magistrate Judge Prose that, even assuming that Mr. Handler generally had a propensity to inflate the truth or even to lie, the allegations are only arguably probative of Mr. Handler's propensity for truthfulness and are not probative of whether Mr. Handler had the necessary scienter regarding Plaintiff's claims. *See* ECF No. 73 at 16. Further, the Court finds that Plaintiff has failed to explain how Mr. Neighbor's termination in 2023 demonstrates a strong, cogent inference that Defendants had the necessary scienter to perpetrate securities fraud when Inspirato went public in 2022.

"re-evaluat[ing] the effectiveness of [Inspirato's] disclosure controls and procedures . . . . [and] developing a remediation plan," as well as adding staff and implementing new measures for "delivering on the type of control environment that [one] would expect with a public company." ECF No. 73 at 20.

This Court finds that Inspirato's admission of its shortcomings, its fall 2022 meeting acknowledging those issues, and its remedial actions create a stronger inference of non-culpability than an inference of fraudulent scienter. *See*, *e.g.*, *Messner v. USA Techs., Inc.*, No. CV 15-5427, 2016 WL 1466543, at *11 (E.D. Pa. Apr. 13, 2016) (finding that "substantial remedial actions" were not relevant to scienter and instead "cut against" the plaintiff, "as they support a non-culpable inference by showing Defendants' recognition of the error and attempt to improve its business to reduce the likelihood of another reporting error").[3] At most, the Court finds that Plaintiff's allegations allege potential negligence, even gross negligence, but that does not meet the pleading standard required for Plaintiff's claims.[4]

---

[3] Plaintiff heavily relies on *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1261 (10th Cir. 2022) to support his position and objects to the fact that the Recommendation failed to cite to it. *See* ECF No. 74 at 11. However, *Pluralsight* is distinguishable from this case and the basic proposition of the PSLRA pleading standard was appropriately discussed by Magistrate Judge Prose in citing to other cases without the need to cite *Pluralsight*. In *Pluralsight*, the Tenth Circuit found that the defendant-CFO admitted that he knew about his material misrepresentations when he made them, that he closely monitored the sales force numbers he misrepresented, and that plaintiff alleged facts sufficient to support a strong inference of fraudulent motive for the suspicious insider stock trading committed by defendants. *See id.* at 1259−69. As discussed in this Order, the Court finds that Plaintiff failed to plead such particular allegations supporting a strong inference of scienter. Thus, Plaintiff's reliance on *Pluralsight* was misplaced to begin with.

[4] To adequately plead the scienter requirement, a plaintiff must adduce facts indicating that the defendants acted with "a mental state embracing intent to deceive, manipulate, or defraud*." In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1109 (10th Cir. 2015) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). The touchstone inquiry is whether the misrepresentations were "intentionally false or at least recklessly made." *Id.* at 1113. To be reckless, the defendants' conduct must be "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (citation omitted).

8

The next closest inference to be drawn in favor of scienter would arguably be Inspirato Chief Executive Officer's, Defendant Brent Handler, sale of Inspirato stock in August 2022 for proceeds of $317,847.57. *See* ECF Nos. 73 at 11, 13 & 74 at 14. "While suspicious insider stock trading is evidence of motive and weighs in favor of inferring fraudulent intent, the amount of profit realized through executive stock sales, standing alone, is insufficient to support an inference of scienter." *Smallen*, 950 F.3d at 1310 (citation omitted). Plaintiff objected to Magistrate Judge Prose's reliance on *Smallen* stating that "the R&R failed to address the broader principle that Plaintiff raised (ECF No. 71 at 11): 'the absence of a motive allegation is not fatal.'" ECF NO. 74 at 14 (citing *Tellabs*, 551 U.S. at 325).

---

Put differently, "[n]egligence, even gross negligence, is not sufficient; something similar to 'conscious disregard' is required." *Id.* (citation omitted). *See also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).

Relatedly, Plaintiff objects to Magistrate Judge Prose's finding that this case is more similar to *In re Gold* than *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003). The Recommendation states the following:

> This court concluded that a fair reading of the first amended complaint indicated that it fell closer to the *Gold Resource* example, alleging GAAP violations but not tying those violations to any broader scheme or more detailed assertions of knowledge that would permit a reasonable inference of the Defendants' scienter. July 2024 Recommendation at 9−10. The court noted that the plaintiff in *Adams* asserted facts showing why it was in the defendants' interest to artificially prop up the stock price (because both a secondary offering and upcoming merger were dependent upon the stock's price remaining high), but in the first amended complaint, Plaintiffs had not identified any imminent business transactions, private trading by Inspirato's executives, or any other unusual circumstances that would suggest motive for Inspirato's executives to perpetrate fraud. *Id.* Although Plaintiffs have updated their allegations, adding new material to the complaint, Plaintiffs have still only alleged violations while failing to identify any imminent business transactions or other, similar unusual circumstances that would suggest a motive for Inspirato's executives to perpetrate fraud. For example, Plaintiffs have included further allegations regarding stock trading by Handler. However, these factual allegations on their own do not sufficiently establish a "strong inference" that Handler acted with scienter.

ECF No. 73 at 12−13. The Court agrees. As discussed in this Order, Plaintiff's allegations regarding Mr. Handler's sale of Inspirato stock in 2022 fail to raise a strong inference of scienter or a motive to perpetrate fraud.

9

While Plaintiff is correct the absence of motive is not alone fatal, Plaintiff ignores the District of Colorado's holding that for stock sales to raise an inference of scienter, plaintiffs must allege "a meaningful trading history for purposes of comparison to the stock sales within the class period," including "information on non[c]lass [p]eriod sales, the amount of stock retained by the [d]efendants, or . . . whether the amount of stock owned by the [d]efendants actually increased during the [c]lass period." *In re Molycorp Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1009 (D. Colo. 2016), *as amended* (Jan. 28, 2016). As Defendants correctly counter, in *Molycorp*, the court found the allegations regarding trades sufficient to raise an inference of scienter "because the Court [was] able to determine whether the trades were 'normal and routine'" and could "discern that the insider-selling Defendants' Class Period actions were out of line with their trading practices." ECF No. 72 at 7 (citing *Molycorp*, 157 F. Supp. 3d at 1009−10). There, plaintiffs alleged facts sufficient to determine the profits made from the stock sale, the relation to defendants' total stock holdings, and how the allegedly suspicious trades compared to defendants' trading history. *Id.* (citing *Molycorp*, 157 F. Supp. 3d at 1010). Plaintiff's allegations in the SAC are inadequate to show scienter through Mr. Handler's sale of Inspirato stock.[5]

The Court, therefore, concludes that the allegations in the SAC, taken collectively, do not give rise to a strong inference of scienter.

---

[5] Defendants also correctly point out that *Pluralsight*, the case relied on by Plaintiff and discussed in this Order, *see supra* n.3, the Tenth Circuit found an inference of scienter based on particularized allegations of the inflated price for the defendants' shares, the percentage of holdings, and trading history during and after the class period. 45 F.4th at 1267. This is yet another area in which *Pluralsight* is distinguishable from this case.

10

### C.   "CORE OPERATIONS DOCTRINE" DOES NOT SUPPORT A STRONG INFERENCE OF SCIENTER IN THIS CASE

Given the Court's finding that the SAC lacks particularized allegations to support a strong inference of scienter, this Court finds that the core business inference is insufficient to support an inference of scienter. The "core operations inference" is "the principle that it may be inferred that facts critical to a business's 'core operations' or important transactions are known to key company officers." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 781 (9th Cir. 2008). However, the Tenth Circuit has "decline[d] to accept a 'core operations' inference in order to plead scienter, absent particularized facts showing what executives actually knew." *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 372 F. Supp. 3d 1139, 1154 (D. Colo. 2019) (citing *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1245 (10th Cir. 2016)).

Plaintiff argues that the SAC supports a finding of scienter because "Inspirato leased most of its properties, it was a small company with only 368 operations employees, and the problems created by its lease accounting were 'massive' and 'big' *[c]oupled with the SAC's other scienter allegations*." ECF No. 74 at 13 (emphasis added).[6] Even taking Plaintiff's allegations as true, which the Court must do, the Court finds that these facts, taken collectively with the rest of the SAC's inadequate allegations of what Mr. Neighbor or Mr. Handler actually knew about the alleged ASC 842 compliance issues, fail to support a strong inference of scienter.

---

[6] Plaintiff again relies on *Pluralsight* to support its objection, but just like the other distinguishing factors of that case, the court looked to several other particularized allegations of defendant's knowledge in combination with the core operations doctrine to find a strong inference of scienter, *see Pluralsight*, 45 F.4th at 1264; particularized allegations that are absent in this case.

11

### D. PLAINTIFF'S "SIMPLICITY" OF ASC 842 ARGUMENT ALSO FAILS

Without adequate particularized facts of scienter, Plaintiff's argument about the "simplicity" of ASC 842 accounting principles also fails. Plaintiff argues that the simplicity of the GAAP provisions gives "rise to at least some inference of intentional or deliberate misconduct." ECF No. 71 at 18 (quoting *In re Medicis Pharm. Corp. Sec. Litig.*, Nos. CV-08-1821-PHX-GMS, CV-08-1870-PHX-GMS, CV-08-1964-PHX-GMS, 2010 WL 3154863, at *5−7 (D. Ariz. Aug. 9, 2010)). Plaintiff admits, however, that alleged simplicity cannot, without more, support a strong inference of scienter. *Id. See also* ECF No. 74 at 11.[7] As detailed in this Order, the SAC fails to allege particularized facts giving rise to a strong inference of scienter, so the supposed "simplicity" of ASC 842 does not tip the outcome in Plaintiff's favor.

### E. DISMISSAL WITH PREJUDICE IS APPROPRIATE

Plaintiffs have requested leave to amend if the Court grants Defendants' Motion to Dismiss, *see* ECF No. 74 at 15, while Magistrate Judge Prose recommended that leave be denied, *see* ECF No. 73 at 22−23. "A dismissal with prejudice is appropriate where a complaint fails to state a claim . . . and granting leave to amend would be futile." *Brereton*

---

[7] Plaintiff's argument that Magistrate Judge Prose failed to consider his citation to *In re Carter's, Inc. Sec. Litig.*, No. 1:08-CV-02940-AT, 2012 WL 3715241 (N.D. Ga. Aug. 28, 2012), *see* ECF No. 74 at 11, does not help him either. Not only is that case outside the Tenth Circuit, but it is distinguishable from this case. The court in *In re Carter's* found that, unlike this case, the Second Amended Complaint had plead several particularized facts that weighed in favor of a strong inference of scienter. *See id.* (the defendant was PricewaterhouseCoopers LLP (an accounting firm), the alleged fraud occurred over a period of at least five and a half years, the defendant recklessly disregarded significant weaknesses in internal controls for that same length of time, and defendant was explicitly told that one of the misstatements in financial records was not allowed). In this case, on the other hand, the defendant is the company itself, not a large accounting firm that had significant accounting industry knowledge to identify red flags, and the accounting errors occurred for less than one year before Inspirato took significant remedial measures; the very same year Inspirato went public.

12

*v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citation omitted). The Court finds that, given Plaintiff's multiple attempts to amend the complaint without success, leave to amend would be futile. *See*, *e.g.*, *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) ("failure to cure deficiencies by amendments previously allowed" is also grounds for denying leave to amend) (citations omitted).

Plaintiff argues that it could provide more details regarding CW5's conversations with Mr. Neighbor and Mr. Neighbor's termination timing, *see* ECF No. 74 at 15, but the Court finds: (1) given the lack of collective allegations supporting a strong inference of scienter in the SAC, these additional allegations would be futile; (2) if Plaintiff truly believes these additional allegations are strong evidence of scienter, he should have included them in his SAC. *See* ECF No. 75 at 10 ("It is unclear why Plaintiff did not make these allegations in the Second Amended Complaint, or why he believes either of these supplemental allegations would save his complaint.") (citing *Brereton*, 434 F.3d at 1219). *See also* ECF No. 75-1 at 14, *Duffaydar, et al. v. Sonder Holdings Inc., et al.*, No. 2:24-cv-02952-SB-JC (C.D. Cal.), Dkt. 49 at 14, Order Granting Motion to Dismiss Amended Complaint ("Park shall file his SAC no later than September 8, 2025. Park is cautioned that if Defendants move to dismiss the SAC for failure to state a claim, the Court does not expect to allow him again to amend his pleading to add allegations that could have been included in the SAC.").

Accordingly, the Court holds that Plaintiff's claims be dismissed with prejudice.

## IV.   CONCLUSION

For the reasons stated herein, it is **ORDERED** that Plaintiff's Objection is **OVERRULED** and Plaintiff's request for leave to file a Third Amended Class Action Complaint is **DENIED**. It is

**FURTHER ORDERED** that the Recommendation of United States Magistrate Judge Susan Prose entered on August 11, 2025, ECF No. 73, is **AFFIRMED AND ADOPTED**. It is

**FURTHER ORDERED** that Defendants' Motion to Dismiss Second Amended Class Action Complaint, ECF No. 66, is **GRANTED** and Plaintiff's Second Amended Class Action Complaint, ECF No. 64, is **DISMISSED WITH PREJUDICE**.

DATED: September 29, 2025

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge